BALTIMORE TRUST & GUARANTEE CO. et al. v. HOFSTETTER.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1898.)

No. 539.

1. RAILWAY MORTGAGES — FORECLOSURE SALE—DECREE BINDING ON PURCHASERS' ASSIGNEE.

An assignee of all the rights and title of the purchasers at a railway foreclosure sale, who is admitted as a party to the proceedings, as a substitute for the purchasers, may be heard on any question affecting the purchasers' bid. but cannot question any part of the decree of foreclosure under which it obtained its title.

2. SAME—PRIOR LIEN CLAIMS—RIGHTS OF ASSIGNEE.

A railway company, taking an assignment of the title acquired by a purchasing committee at a foreclosure sale under a decree providing for payment into court of additional sums if necessary to meet claims adjudged to be superior liens,, cannot set up, as against claims of this character, a title acquired subsequent to the foreclosure sale, by purchasing the road at a judicial sale made by another court to enforce a lien claimed to be superior to the mortgage and to the claims in controversy.

3. SAME—LABOR, MATERIAL, AND DAMAGE CLAIMS.

The Tennessee statute declaring that no railroad company shall have power to give a mortgage which shall be valid against judgments and decrees for timbers furnished. labor done, or damages occasioned to persons or property in the operation of the road (Mill. & V. Code, § 1271), does not create any

lien in favor of such claims, but merely postpones the mortgage to them; and hence a purchaser at a foreclosure sale takes the property free from liability for such claims, unless, by contract or some legal proceeding, they have become liens.

4. SAME—PERSONAL INJURY CLAIMS—SALE OF ROAD.

A judgment recovered against a railroad company for personal injuries after its entire equity of redemption has been extinguished by a foreclosure sale, and after its property and franchises are in the entire possession and control of the purchasing company, as owner, does not constitute a lien thereon.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

This is an appeal from a decree upon an intervening petition in a railroad-foreclosure case, giving a preference to an unsecured debt, out of the proceeds of a mortgage foreclosure sale, to John Hofstetter, a judgment creditor of the Overland Railroad Company. The mortgages foreclosed were one executed February 13, 1892, by the Overland Railroad Company, a Tennessee street-railway company, to the Baltimore Trust & Guarantee Company, as trustee, to secure an issue of bonds aggregating $100,000, and another, to same trustee, to secure the same debt, made by the Nashville Traction Company, a Tennessee corporation, which had succeeded to the rights and property of the Overland Railroad Company, subject to the mortgage aforesaid. This second or additional mortgage was chiefly intended to be a conveyance of additional equipment added by the successor company, and conveyed in consideration of certain indulgence extended by the mortgagee, not necessary to be stated. Default in the payment of interest having accrued, and the maturity of the principal thereby precipitated, a foreclosure bill was filed in the circuit court against the Overland Railroad Company and its successor, the traction company. A receiver was appointed September 18, 1895, who took possession and operated the said railroad pending foreclosure. February 4, 1896, a foreclosure decree was pronounced, settling the debt due on account of the mortgage by the Overland Railroad Company at $100,000 principal and $24,000 interest, and directing a sale of the franchises and property of both corporations for cash. It was provided, among other things, that, if the complainants (meaning thereby the mortgagee, or the beneficiaries under the mortgage) should buy the property, they should pay into court only $5,000, and that the remainder of their bid might be credited pro rata upon each bond and each coupon, with this proviso: "But the said complainant, in addition to the said sum of $5,000, shall take and hold the property subject to such future decrees with reference to the payment of any further or other sum of its said bid into court as shall be by the court deemed necessary to discharge the costs and expenses of this litigation, and to pay off and discharge any claims which this court may determine are entitled to priority over the bonds owned by the said complainant." The same decree further directed that all persons claiming to be creditors of either of the defendant corporations should file their claims within six months, by petition, and without further order of the court, and that all such petitions should "stand referred to the special master appointed in this cause, who shall, after giving proper notice to counsel of record, take and hear any proof that may be brought before him, reduce the same to writing, and report to this court the amounts, if anything, due upon each and every of such claims, and whether or not the same is entitled to any lien, preference, or priority." Under this order the appellee, John Hofstetter, filed an intervening petition, in which he claimed to be a creditor by judgment for the sum of $3,500 rendered in a circuit court of the state October 29, 1895, against the Overland Railroad Company, and that his judgment was for damages for a personal injury sustained December, 1892, through the negligence of said railroad company when operating said railroad. He prayed that this judgment might be paid out of the proceeds of the sale of the said railroad, in preference to the mortgage debts of said company. The mortgaged property was purchased at the foreclosure sale for $100,000, by a committee representing all of the bondholders and the sale confirmed to them. They paid in $5,000, the remainder of their bid being credited on the mortgage debt, and were placed in possession,—subject, however, to the provision above set out, in respect to paying in any further part of their

said bid in case same was needed to pay claims entitled to a preference over the mortgage debt. Before the master had reported upon the claim of Hofstetter, the Nashville & Suburban Railway Company filed a petition praying leave to be admitted as a party. A stipulation was thereupon signed by counsel representing intervening creditors, agreeing that said company might become a defendant to the original bill, and to all of the petitions filed, and might "make defense thereto." This was signed by the counsel for Hofstetter. The court thereupon permitted said company to become a party, and to file an answer to Hofstetter's intervening petition. In its answer it alleged that the purchasers at the foreclosure sale had sold and conveyed to it "their right, title, and interest in all of said property and franchises," and that it was then "in possession of the same," and was then "running and operating said road." The defense presented by this answer to the relief sought by Hofstetter was that, after succeeding to all the rights and title acquired by the purchasers under the foreclosure decree of the circuit court, it had acquired another and superior title to the same property, under a judicial sale made by the chancery court of Davidson county, Tenn., in the case of Inez Colishaw against the Overland Railroad Company, wherein a judgment lien had been enforced by a sale of said Overland Railroad Company, in favor of said Inez Colishaw, superior in lien to that of the mortgage enforced in the circuit court, and to any right of Hofstetter against the same property. The master reported that the claim of Hofstetter was entitled to priority of payment out of the proceeds of sale. To this report only the Nashville & Suburban Railway Company filed exceptions. All exceptions were overruled, and "the purchasers" ordered to pay into court an additional portion of their bid sufficient in amount to pay off this and other claims entitled to be paid in preference to the mortgagees. From this decree, the Baltimore Trust & Guarantee Company, the Suburban Railway Company, and H. M. Doak, receiver, have appealed, and only the Nashville & Suburban Railway Company has assigned error. The errors thus assigned are as follows: "(1) It was error to decree that John Hofstetter had, by virtue of his judgment, more than an enlargement and extension of the general lien given a judgment creditor by virtue of sections 3694–3697, Mill. & V. Code Tenn., in this: that the mortgage from the Overland Railroad Company to the Baltimore Trust & Guarantee Company should not be an obstacle in the way of its enforcement by the legal methods given by the statute. (2) It was error to decree that after the sale of the entire property of the Overland Railroad Company, under the decree of the chancery court, at Nashville, Tenn., in the case of Inez Colishaw against the Overland Railway Company, there was any property, legal or equitable, for the lien of John Hofstetter to operate upon, and the said lien was therefore extinguished. (3) It was error to decree that John Hofstetter, a stranger, and not an employé of the Overland Railway Company at the time he is alleged to have sustained his injuries upon which his judgment is founded, is entitled to the prior lien and right conferred by the Tennessee act of 1877, c. 72, Mill. & V. Code, § 1271. (4) It was error for the court to decree in favor of allowing the claim of John Hofstetter as a prior lien on the property of the railroad company, when there was no proof to sustain the same. (5) It was error for the court to have overruled the exceptions to the master commissioner's report."

Baxter Smith, for appellants.

Jordan Stokes, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The right of the Nashville & Suburban Railway Company to appeal and assign error has been challenged. It was not a party to the original record. The purchasers at the foreclosure sale were Messrs. Smith, Fisher, and Middleton, who were acting in behalf of all the bondholders. The sale was confirmed to them as purchasers. They subsequently transferred all their rights and interests to the

Nashville & Suburban Railway Company. The purchaser at a fore-closure sale makes himself thereby a party to the proceeding, with the right to be heard on all questions thereafter arising, which shall affect his bid, which are not foreclosed by the terms of the decrees under which he bought. Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; Davis v. Trust Co., 152 U. S. 590, 14 Sup. Ct. 693. It is true that the Suburban Railway Company was not the record pur-chaser; but it is the assignee of the purchaser, and holds the property subject to all the conditions under which the purchaser held it. This alone would not make it a party, or give it any right to be heard upon questions arising affecting the purchaser's liability under his bid. But when it came forward, and set up its status as the assignee of the right and title of the purchaser, and was admitted as a party, and allowed to appear and defend against Hofstetter's claim, it became a party, as a substitute for the record purchaser, and has the same right to be heard that the purchaser would have had. The decree of sale permitted the mortgagees, in the event they became the pur-chasers of the property, to credit upon their bonds the greater part of their bid. But this was upon the distinct condition that they "should take and hold the property subject to such future decrees with reference to the payments of any further or other sum of their said bid into court as shall be by the court deemed necessary to discharge the costs and expenses of this litigation, and to pay off and discharge any claims which this court may determine are entitled to priority over the bonds owned by complainants." The Suburban Railway Com-pany, as assignee of the purchasing committee of bondholders, has no higher or better title or right than the purchaser had, and holds the said railroad subject to resale for noncompliance with this con-dition of the decree of sale. Admitted as a substitute, it may be heard upon any question affecting the purchaser's bid, but it cannot question the original decree of foreclosure, nor any decree under which it has acquired its rights and title. Swann v. Wright, 110 U. S. 510, 4 Sup. Ct. 235; Kneeland v. Loan Co., 136 U. S. 89–94, 10 Sup. Ct. 950.

We come now to the defenses presented to the decree directing payment of Hofstetter's claim out of the proceeds of the foreclosure sale. In considering these, we shall treat the appellant the Nash-ville & Suburban Railway Company as standing precisely in the shoes of the bondholders' committee who bought at the foreclosure sale, and who have assigned their interest and title to it. On no other theory is it entitled to be heard at all in contesting Hofstet-ter's decree.

The first of these defenses is that the Suburban Railway Com-pany has, since becoming the assignee of the title acquired under the foreclosure sale under the decree of the circuit court, acquired a new and independent title, under the decree of a state chancery court enforcing a judgment lien in favor of Inez Colishaw, and against the Overland Railroad Company, which lien antedated the lien of the mortgages enforced in the circuit court. The purchasers at the foreclosure sale bid the property in at $100,000. They have paid in but $5,000 of this amount. They may be required to pay in all or any part of the remaining $95,000, if needed to pay off intervening

claimants entitled to priority. Neither the purchaser nor his assignee can attack that decree. If, after sale and confirmation, and before the purchase money had been paid in, it had been discovered that the title obtained by the purchaser was defective, or was subject to some lien not before discovered, the court might, on a proper proceeding, and under some circumstances, have relieved the purchaser from his obligation to take the property, and ordered a resale, or made an abatement in the purchase price. Preliminary to any relief, the purchaser in such case would be obliged to offer to surrender the property for resale, and to abide by such terms as the court might impose, and to show that he was ignorant of the defect in title, or the adverse lien. and had been innocently misled. The general rule at all judicial sales is caveat emptor, and to take a mortgage foreclosure sale out of that rule would require a strong showing. Here the assignee of the purchaser made no effort to have the sale set aside, and none to have the Colishaw lien paid out of the proceeds of sale, though it is. clear that, if Colishaw's judgment lien was superior to the lien of the mortgages foreclosed, the claim would have been paid off, upon proper application. But in this instance the creditors holding the mortgage and the purchaser at the foreclosure sale are identical in interest. The payment of Inez Colishaw out of the proceeds of sale would have been a payment at the expense of the purchasers. In this dilemma, the purchaser makes no effort to have this prior lien paid out of the proceeds of the mortgage sale, but elects to buy at the Colishaw sale, and then use that title as a defense against the payment into the circuit court of any further purchase money. Such a course would be grossly inequitable. The new or additional title the purchaser has thus acquired is no answer to his liability for purchase money. Nor is it of any avail to say that the Colishaw claim is superior in rank to the claim of Hofstetter. The decree of sale provided that the purchase money should be paid into court to the extent necessary to pay off claims entitled to priority over the mortgages foreclosed. If Hofstetter's claim is one of that description, it is entitled to payment, and the purchaser must pay in enough of his bid to satisfy that and all other claims which the circuit court shall determine are entitled to such priority. That condition in the decree ·of sale is one which the purchaser cannot question, and for a like reason no assignee of the purchaser can be heard to contest its force and validity. The only question open to contest is so much of the decree as finds that the Hofstetter judgment is entitled to priority of payment out of the proceeds of sale. Hofstetter's judgment was rendered long after the execution of the two mortgages enforced in this case. But it was a judgment for personal injuries sustained by him through the negligence of the Overland Railroad Company. Priority in the payment of his judgment is claimed under the provisions of the third section of chapter 72 of the Tennessee Acts of 1877, carried into the revision of the Tennessee Code by Milliken & Vertrees as section 1271. That section is in these words:

"No railroad company shall have power to give or create any mortgage, or other kind of lien, on its railway property in this state, which shall be valid

and binding against judgments and decrees and executions therefrom, for timbers furnished and work and labor done on, or for damages done to persons and property in the operation of its railroad in this state."

By the act of March 26, 1887, all of the provisions of chapter 72 of the act of 1877 were extended to street-railway companies. The court below held that the effect of this provision of the Tennessee statute law was to postpone the mortgages made by the Overland Railroad Company, and that the proceeds arising under the mortgage foreclosure sale were first liable to Hofstetter. The first objection made to this decree is that the Overland Railroad Company never availed itself of the power of consolidating with another company conferred by the act of 1877, and therefore the provision limiting its power to mortgage its property found in the third section of that act has no application to it. This act was construed by the Tennessee supreme court in Frazier v. Railway Co., 88 Tenn. 161, 12 S. W. 537, as a limitation upon the power of all railroad companies to make mortgages, not having that power under special and irrepealable charters. Touching the scope of this third section, the supreme court of Tennessee in that case said:

"The object of the act is to regulate and define the terms upon which the state was willing to confer upon railroad corporations the power to consolidate, and to define the powers of such consolidated companies. We have already seen that a railway corporation may not, without express authority, abdicate its functions and duties, either by a sale or lease or mortgage. A fortiori, it may not lose its own identity by suffering consolidation with another. It would therefore seem to need no support of argument that when the state, by legislation, undertook to confer upon all railroad corporations the power to absorb another, or to suffer an absorption by consolidation, it might well couple the grant of so extraordinary power with the condition or proviso that the corporations so empowered to consolidate should not have power, before or after such consolidation, to make any mortgage or create any lien which should affect the class of creditors to which complainants belong."

This construction by the highest court of Tennessee is one which we should accept and apply in respect to all Tennessee railroad companies not having, under special charters, the power of mortgaging their property. This provision operates only as a limitation upon the power of railway companies, commercial and street, to mortgage their property. Mortgages are not to have effect as against claims of the class mentioned, but no statutory lien in favor of such claims is thereby created. It follows, therefore, that a purchaser of the property of such a company, sold under judicial proceedings, or by bargain and sale, would take the property free from liability to creditors of the class mentioned in the statute, unless, by contract or some legal proceeding, they had become liens. This was the construction placed upon this statute by this court in Railroad Co. v. Evans, 31 U. S. App. 432–447, 14 C. C. A. 124, and 66 Fed. 818, where we said:

"The Tennessee supreme court has construed this act as operating as a limitation upon the power of railroad companies to give a mortgage or create a lien upon their property situated in the state, which should be valid as against claims of the character mentioned in the act. Frazier v. Railway Co., 88 Tenn. 138, 12 S. W. 537. Such claims do not constitute liens by virtue of the act. The act has no other effect than to postpone mortgages and other liens created by act of the railroad company to claims of the character mentioned. A bona fide

sale would not be a mortgage or lien, within the terms of the act, and the title of such purchaser would be unaffected by the act. If the Savannah & Western Railroad Company is a bona fide purchaser, it may set up the deed under which it holds as an answer to a claim, though clearly within the preferential class defined by the statute."

But this record shows that long prior to this foreclosure proceeding the property and franchises of the Overland Railroad Company had been sold under a creditors' bill filed in the chancery court of Davidson county, Tenn., subject only to the mortgage then existing in favor of the Baltimore Trust & Guarantee Company, and acquired through that judicial sale by the Nashville Traction Company. This was a wholly new and independent corporation, and the title it acquired by the sale under the decree of the state chancery court was a good equitable title, subject only to the mortgage aforesaid, and to the judgment lien in favor of Inez Colishaw; neither the Baltimore Trust & Guarantee Company nor Inez Colishaw being parties to that bill, so far as this record shows. Unless, therefore, Hofstetter's judgment was in some way a lien, the title of the traction company to the property and franchises of the Overland Railroad Company was perfect, as against any and all claims in whose favor the act of 1877 postponed mortgages. In October, 1894, nearly a year before the date of Hofstetter's judgment, this successor corporation assumed the Overland mortgage, and made a second or additional mortgage to the Baltimore Trust & Guarantee Company; conveying every interest it had thus acquired, as well as all additions and improvements it, as owner, had placed upon the original property. This successor company had been in possession, as owner, for some time prior to this mortgage, and had for more than a year been operating the said railroad, when Hofstetter recovered his judgment. Upon this state of facts, it is most apparent that the Overland Railroad Company, by the sale of all its property and franchises to a purchaser at judicial sale, had lost even its equity of redemption under its mortgage, and had no property whatever which could be reached by any creditor at large. The traction company had acquired its property and franchises subject alone to the lien of the mortgage in favor of the Baltimore Trust & Guarantee Company. Under this state of facts, the property sold under the decree of sale of the court below was the property of the traction company; the sale being for the satisfaction of the Overland Railroad Company's mortgage, as well as of the second or additional mortgage made to secure the same debt. The proceeds of sale were the proceeds arising from the sale of the traction company's railroad, and were applicable to the satisfaction of the mortgage made by the Overland Railroad Company only because that incumbrance had not been removed by the creditors' proceeding, under which it had acquired title. Hofstetter was not a creditor of the traction company, and had no right to have its property applied to the payment of his judgment against the Overland Railroad Company. Of course, if Hofstetter's claim had constituted a lien from the time he sustained his injury, and that lien antedated the judicial sale under which the traction company became a purchaser, the title thus acquired would have fol-

85 F.—6

lowed the property; he not being a party to that proceeding. But there is no pretense that Hofstetter had any description of lien, and no kind of excuse for paying him out of the property of the traction company; that property being subject only to such liens against the predecessor company as had not been cut off by the creditors' proceeding under which it acquired title. This objection, we think, arises under the fourth and fifth assignments of error, and under the second exception taken to the master's report. It is true that neither the exceptions to that report, nor the assignments of error, present this question as clearly and definitely as it might and should be presented; but the injustice done by the decree below is so apparent that this court is disposed, in so meritorious a matter, to construe both exceptions and assignments of error with a degree of liberality which it would not exercise in a less meritorious defense. The decree must be reversed, and the petition of Hofstetter dismissed, with costs.