## THOMAS v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Courts, S. D. Ohio, D. Kentucky, and E. D. Tennessee.    December 14, 1898.)

1. RAILROADS—RECEIVERSHIP—PRIORITY OF CLAIMS.

Amounts shown by the books of a railroad company to be due for labor to former employés, which had remained unclaimed for more than six months at the time of the appointment of a receiver, and which have never been reduced to judgment, nor established as liens under any statute, are not entitled to priority of payment, but stand on the same footing as claims of general creditors.

2. SAME—PROPERTY IN DIFFERENT STATES—PRIORITY OF LIENS UNDER LOCAL STATUTES.

Where the only property of an insolvent railroad company consists of a leasehold interest in a line of road extending into or through different states, and the rolling stock used in operating the same, and creditors' suits are commenced in the federal courts in each of the different jurisdictions, and judgment creditors in the different states are, by the local statutes, given a priority of lien on certain of the property of the company, in the distribution of assets the proceeds of such property, either of rolling stock or leasehold or both, will be apportioned according to the mileage in each state, and the judgments therein given priority as to the respective portions.

3. SAME.

Under the enabling act of the legislature of Kentucky, under which the Cincinnati Southern Railway was built through that state, local creditors obtaining judgments against a lessee of the road for wages, materials, or supplies furnished, or for damages for injuries to persons or property, are given a priority in the nature of a lien on the rolling stock of such lessee used in operating the road in the state, which is superior to any mortgage thereon.

4. SAME.

The Tennessee act of March 24, 1877 (Laws 1877, c. 72, § 3), relating to railroad companies generally, and which, by the enabling act under which the Cincinnati Southern Railway was built in the state, became applicable to that road, gives local creditors obtaining judgments against a lessee of the road for wages, supplies, or damages for injuries to persons or property a priority over mortgages as to both the rolling stock and leasehold interest of such lessee in the state.

These were general creditors' bills filed by Samuel Thomas against the Cincinnati, New Orleans & Texas Pacific Railway Company in the circuit courts for the Southern district of Ohio, the district of Kentucky, and the Eastern district of Tennessee. Heard on exceptions to the master's report finding the indebtedness of the defendant and the priority of liens.

Edward Colston, for receiver.

W. T. Porter, for trustees.

E. W. Kittredge, John W. Warrington, W. O. Bradley, D. S. Hounshell, and Mr. Templeton, for creditors.

TAFT, Circuit Judge. This case now comes on upon exceptions to the report of the master. The bill was a general creditors' bill filed by the assignee of a judgment creditor to subject the property of the defendant company to the payment of all its debts. A receiver was appointed, and he has been operating the railroad of the defendant company since March 17, 1893, under the order of the court. The special master was directed "to inquire and state to the court all the creditors of the said the Cincinnati, New Orleans & Texas Pacific Railway Company, and the amount of their respective claims, and which of the same, if any, are liens upon the property of said company." After due advertisement to all creditors, and a hearing, the master has made his report. By leave of court, he has filed certain supplemental reports since filing the original. The defendant company is an Ohio corporation, having a capital stock of $3,000,000. It was organized in 1881, to become the lessee of a railroad known as the "Cincinnati Southern Railway," running from the city of Cincinnati, in Ohio, to the city of Chattanooga, in Tennessee, a distance of 338 miles. The road was built and is owned by the city of Cincinnati, under and by virtue of an act of the legislature of Ohio passed May 4, 1869, and several amendatory acts, supplemented by enabling acts of the legislatures of Kentucky and Tennessee. The power to build the road for the city, and to conserve its interests therein, was vested by the acts above referred to in a board of five members, called the "Trustees of the Cincinnati Southern Railway." These trustees, with approval of the trustees of the sinking fund of Cincinnati, made to the defendant company, in 1881, a lease of the railroad upon a rental which increases at the end of each period of five years. The trustees reserved in the lease a lien upon the leasehold to secure the rent, and they also received from the lessee company a mortgage upon all its rolling stock and equipment to secure the payment of the installments of rent as they should fall due under the terms of the lease. The fourth period of five years under the lease has now been entered upon, and the yearly rental is $1,090,090, together with $12,000 a year

to be paid the trustees for expenses of the trust. In 1881 and 1882, the secretary of the defendant company fraudulently issued certificates of stock which had been signed in blank by the president of the company. After a very long litigation, judgments in the superior court of Cincinnati aggregating $350,000 were obtained by the holders of such certificates against the company for its refusal to recognize them as valid. The inability of the company to secure the payment of these large judgments pending proceedings on review in the supreme court of Ohio is what led to the filing of the creditors' bill herein. The only assets of the company are the leasehold estate in the railroad, to expire in 1906, with an annual rental burden for two years of $1,102,000, and for the last five years of $1,262,000, and its rolling stock and other equipment. The creditors' bill is pending in the circuit courts of the three districts in which the railroad lies, to wit, in the Southern district of Ohio, in the district of Kentucky, and in the Eastern district of Tennessee. The special master has been appointed in each of the three courts, and has published advertisements in each district requiring creditors to file their claims. The master has classified the claims filed under the following heads: (1) Claims in judgment, (2) pending suits, (3) claims for rent of terminal lands, (4) claims of general creditors, (5) claims of the trustees of the Cincinnati Southern Railway. The claims in judgment he subdivides into (a) Tennessee judgments, (b) Kentucky judgments, (c) Ohio judgments, (d) the overissued stock judgments. The claims in judgment, as reported, are: Tennessee judgments, $11,181.29; Kentucky judgments, $83,432.13; Ohio judgments, $12,595.83; overissue stock judgments, $353,478.12,—total judgments, $460,687.37. The master reports as due for rent for terminal lands and offices in Cincinnati, $95,997.16; the claims of the general creditors the master reports as amounting to $21,180.03; or a total indebtedness which he finds to be due of $578,045.44 as of January 1, 1898. In addition to the above, he found to be due to the trustees of the Cincinnati Southern Railway upon January 12, 1898, $275,500 for quarterly rent and expenses of the trust. He also found to be due from the company to said trustees $15,593 for the proceeds of insurance collected by the company upon certain shops destroyed by fire. This last amount I have already disallowed, upon exception, as not a proper charge. The rental and installment for expenses of the trust have since been paid, but, as rent continues to fall due, the question of the priority of claim for rental is before the court. I shall deal in this opinion only with the questions of lien and priority generally as between classes of claims, and reserve the exceptions to the findings as to the amount and validity of particular claims to separate opinions.

It is objected that under the order the master has no power to adjudicate priority of liens between the different creditors. He was directed to report the amount of the claims, and which, if any, were liens on the property of the company. It seems that within this authority he was justified in determining the priority of the claims. But, even if he was not, the court must determine it. All the evidence was submitted to the master, and the questions have been argued. It is convenient to consider them as presented

on the exceptions to the findings of the master, whether those findings as to priority were beyond the scope of the reference or not. The master reports: First, that the first and best lien upon the property of said company is to secure the claims of certain laborers, amounting to $2,217.41; second, that the next best lien upon the property of the defendant, the leasehold and rolling stock and other equipment, is the mortgage lien of the trustees of the Cincinnati Southern Railway, to secure the amount due them for the rental, and the sum to be paid for the expenses of the trust; third, that, after the satisfaction of the foregoing claims from the proceeds of sale of the leasehold and property of the defendant company, the judgment creditors of said company are entitled to be paid the full amounts of their judgments in the order of the respective dates of the same; fourth, that, after the satisfaction of the judgments, then the claims of the general creditors, including those for rents of terminal lands and offices, not in judgment, are entitled to be paid pro rata from the remainder of the proceeds of sale.

Exception is first filed to the priority accorded to the labor claims. The exception must be sustained. These claims were presented by the auditor of the receiver, and were based on amounts shown to be due on the books of the company to former employés, and unclaimed by them more than six months prior to March 17, 1893, when the receiver was appointed. They were never put in judgment, and no proceedings were ever taken under any state statute to fix a lien, if any such exists. All labor claims accruing due within the six months prior to the receivership have been paid. The claims in question were really presented at the suggestion of the auditor of the receiver by the receiver's counsel with the approval of the court, and not by the parties in interest. It may be that the real owners cannot even now be found. However this may be, the master gives no reason in his report why they should be given priority, and I know of none. The claims must be paid merely as claims of general creditors.

The finding of the master that the trustees of the Southern Railway have a first and best lien on the leasehold and rolling stock and equipment of the defendant company to secure rental and trust expenses is excepted to by certain judgment creditors of Kentucky and Tennessee. These Kentucky judgment creditors contend that by virtue of the laws of that state they were given priority in respect of the proceeds of sale of the equipment and rolling stock of the defendant company. The Tennessee judgment creditors contend that they have first liens for their judgments, prior to that of the trustees, not only on the rolling stock of the defendant company, but also upon its leasehold; and, more than that, these judgments are liens upon the railroad itself as the property of the city of Cincinnati.

1. As to the Kentucky judgments. As already stated, by the act of the legislature of Ohio passed May 4, 1869, and subsequent acts, and by the vote of the people of Cincinnati in accordance with such acts, the trustees of the Cincinnati Southern Railway were authorized to issue bonds and to build a railroad from Cincinnati

to Chattanooga, and, by later legislation, with the consent of the sinking fund trustees, to lease the same. By the act of the Ohio legislature passed April 18, 1873, it was provided that the holders of bonds issued under the act of May 4, 1869, should be entitled to hold by way of mortgage without any conveyance the line of railroad and its appendages, and the net income thereof, and all the estate, right, title, and interest therein of the city and of the board of trustees of said line. By act of February 13, 1872, the legislature of Kentucky passed an act authorizing the trustees of the Cincinnati Southern Railway "to extend, construct, and maintain" a line of railway through Kentucky from Cincinnati to Chattanooga, Tenn., and "to exercise the powers vested in them under and by virtue of said act of the general assembly of the state of Ohio, subject to the provisions and restrictions of this act." Sections 2–9 of this act contain provisions for survey of route and filing map of same, condemnation of property, crossing of public ways, changing of route, and building of bridges. The eleventh section of the act, after reciting the intended issue of bonds by the city of Cincinnati in an amount not exceeding ten millions of dollars, and the provision for their payment, provides as follows:

"Be it further enacted, that the respective holders of all such bonds are hereby declared to be entitled to hold, by way of mortgage without any conveyance, the said line of railway and its appendages, and the net income thereof, and all the estate, right and title and interest of the said city of Cincinnati and of the said board of trustees therein, until the respective sums mentioned in said bonds and the interest thereon shall be fully paid without any preference, one above another, by reason of priority of date of any such bonds, or of the time when such holder became the owner of the same or other howsoever. The mortgage lien hereby given is to vest as soon as rights of way or lands whereon are to be placed the works and conveniences used in constructing, maintaining or operating said railway are acquired or taken by virtue of the powers of the said trustees: provided that nothing herein contained shall affect the lien of any vendor upon lands sold to said trustees, not to be held to include the rolling stock used in operating said road: and provided further, that any mortgage that may be made by any lessee or lessees of said line of railway, or persons or company operating it, on the rolling stock used in operating said road, shall not have precedence over, but shall at all times be inferior in priority to judgments that may be obtained against them, in any county through which said road may run for wages, materials and supplies in running said road; for damages for breaches of contracts of affreightment for injury, loss or destruction of any property put on the cars on said road for transportation, or for any injury to persons or property occasioned in the running of said road."

Of course this section cannot have extraterritorial effect, and could not provide for the displacement of a mortgage lien on rolling stock and equipment in Ohio and Tennessee. Rolling stock is continually changing its situs from one of the three states to another. Upon what part of it can the Kentucky statute be said to operate? At one time or another probably all the rolling stock passes through Kentucky, and would be subject to execution upon judgments of the class under consideration. In jurisdictions so closely united as those of the circuit courts of the United States in contiguous districts, and in which the same judge may sit, the solution of the difficulty presented is comparatively simple. The road is a unit, and so is the rolling stock. As in cases of taxation upon interstate lines, the rolling stock

may be properly and equitably apportioned to the states in which the road lies according to mileage. The railroad, including 2.34 miles of leased trackage, is 338.24 miles long, of which 197.93 miles are in Kentucky, 137.43 miles are in Tennessee, and 2.90 miles in Ohio. When, then, the question of distributing the proceeds of sale of the entire rolling stock as between the trustees of the Cincinnati Southern Railway under their mortgage for rent upon the rolling stock and creditors with Kentucky judgments for injuries to person and property is before the court for consideration, it must follow that out of $^{198}/_{338}$ of the proceeds of the rolling stock the latter must first be satisfied in full before any of that part of the proceeds of sale shall be applied in satisfaction of the amount due for rent secured by the mortgage. The judgment creditors are not given a specific lien on the rolling stock in Kentucky, but in a cause where, as between them and mortgagees of that rolling stock, the proceeds of its sale are to be distributed, the necessary effect of the statute is that they have the same priority of distribution as they would have had were their right evidenced by a formal prior lien. As these Kentucky judgments for injuries to person and property must be preferred to the mortgagees, and as the mortgagees are to be preferred to other creditors, judgment and general, of the defendant company, in respect of the Kentucky rolling stock, or $^{198}/_{338}$ of the whole rolling stock, it follows that, in so far as the master reports that the trustees of the Cincinnati Southern Railway have, by virtue of their mortgages on the rolling stock, a first and best lien on the rolling stock for rent, prior to that of such Kentucky judgments, the exceptions to the same are sustained.

We come now to the Tennessee judgments for injuries to persons and property. The Tennessee enabling act passed January 20, 1870, under which the trustees of the Southern Railway built the road in Tennessee, is in many respects like the enabling act of Kentucky. Section 7 gives the first ten million bonds issued by the city of Cincinnati the same mortgage without conveyance as the eleventh section of the Kentucky act quoted above, but it does not contain the further provision postponing the lien of all mortgages on the rolling stock to the payment of judgments for injuries to property and persons.

The seventeenth section provides that:

"The state of Tennessee shall have the same legislative control in this railroad interest or charter that the state holds in other railroads in the state of Tennessee."

The eighteenth section provides that:

"A right of action for the redress of any injury caused by or for any claim or demand against said trustees or railway shall exist in this state in any court or judicial tribunal having jurisdiction thereof, against said trustees or railway; and process may be served upon any depot agent of such trustees or railway, residing in this state, in the absence of the president or head officer of said trustees or railway and the judgment rendered against the trustees of said Cincinnati Southern Railway, or by whatever name it transacts its business, and the property, real or personal, belonging to such trustees or railway within this state, shall be enforced and be liable for the satisfaction of the judgment; the existence of any mortgage on said railway and appendages as provided for in this act, to the contrary notwithstanding; and before entering on any lands of this state, said trustees shall accept the provisions of this act."

On March 24, 1877, before the trustees made the lease of the railroad to the defendant company, the legislature of Tennessee passed a general law providing:

"That no railroad company shall have power under this act, or any of the laws of this state to give or create any mortgage or other kind of lien, on its railway property in this state, which shall be valid and binding against judgments and decrees and executions therefrom, for timbers furnished and work and labor done on, or for damages done to persons and property in the operation of its railroad in this state."

Acts Tenn. 1877, c. 72, § 3, proviso 3; Frazier v. Railway Co., 88 Tenn. 138, 12 S. W. 537; Railroad Co. v. Evans, 31 U. S. App. 432, 14 C. C. A. 116, and 66 Fed. 809; Guarantee Co. v. Hofstetter, 29 C. C. A. 35, 85 Fed. 75.

Under the seventeenth section of the enabling act, the act of 1877 applied to and qualified the power of the defendant company to give mortgages both upon its leasehold and its rolling stock in Tennessee. It had no real estate in Tennessee. The question whether such judgments are liens upon the railroad itself, the property of the trustees, under the last section of the enabling act, quoted above, does not arise, because the fee simple of the Cincinnati Southern Railway is not before the court under the general creditors' bill. That bill only seeks to subject the assets of the lessee company to the payment of its debts, and its only interest in the railway is its leasehold estate. I am very clear that the vague provisions of the last section of the enabling act do not confer a lien in favor of persons holding Tennessee judgments against the lessee company prior in right to those of mortgagees of such company, and I shall not consider that section further.

It is clear that by virtue of the act of 1877 judgments recovered in Tennessee in causes of action of the kind described therein are to be satisfied out of the proceeds of sale of the leasehold and of the rolling stock in Tennessee, before any validity can be accorded to the mortgage and lien of the trustees securing payment of the rent under the lease. The leasehold and rolling stock in Tennessee are $^{139}/_{338}$ of the whole leasehold and rolling stock. As to that part of the property of the defendant company, the trustees by virtue of their mortgage upon the rolling stock, and by virtue of the lien for rent reserved in the lease, do not have a first and best lien, but the Tennessee judgment creditors are entitled to be satisfied before the rent is paid, and to this extent the exceptions to the master's finding are sustained. The mortgage and lien of the trustees for rent gives them a priority over all the other creditors as to the Tennessee property.

The finding of the master that all other judgments than those considered are entitled to a preference in the distribution of the assets of the defendant company according to their respective dates, and that the claims of the general creditors not in judgment must be postponed to the payment of all the judgments, has been duly excepted to. Had the defendant company possessed any real estate in Ohio, the Ohio judgments would, under section 5375 of the Revised Statutes of that state, have been liens thereon from the first day of the term of the court at which they were respectively rendered; but the

defendant company has only a leasehold interest in land in this county, the term being but 25 years, and no lien attaches to such an interest in favor of judgment creditors under the section cited. Buckingham's Ex'rs v. Reeve, 19 Ohio, 399. The Kentucky and Tennessee judgments, other than those already given a priority, have not, by the laws of their respective states, any lien on the Kentucky property of the defendant company. It follows, therefore, that, except as to the Tennessee and Kentucky judgment creditors of the favored class, the claims of all the other creditors, judgment or otherwise, stand upon an equal footing, and are entitled to a pro rata distribution of the assets of the defendant company after the Tennessee and Kentucky judgments of the class mentioned, and the claims of the trustees of the Cincinnati Southern Railway under the mortgage and lien for rent, are satisfied.

An order may be made sustaining the exceptions to the master's report in accordance with the foregoing opinion.