THOMAS v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Courts, S. D. Ohio, D. Kentucky, and E. D. Tennessee. December 14, 1898.)

1. INSOLVENT RAILROADS—DISTRIBUTION OF ASSETS IN CREDITORS' SUIT—STATUTORY PRIORITIES.

A creditors' bill against an insolvent railroad corporation is merely an equitable levy, for the benefit of all creditors, secured and unsecured, and the question of priority is to be settled in the same manner as if execution at law had been levied, at precisely the same time, upon judgments duly rendered, for all claims found by the court to be just; and where, under state statutes, certain favored classes of judgments are given priority over mortgage or other liens upon the property in that state, such priorities are to be recognized and enforced on distribution the same as though executions had been levied under the judgments.

2. SAME—EARNINGS OF RECEIVERSHIP.

The net earnings from the operation of railroad property by a receiver appointed under a general creditors' bill belong to the creditors in the same order of priority as must be preserved in the distribution of the proceeds of the property itself on its sale.

On the Question of Distribution of Net Earnings.

Edward Colston, for receiver.
W. T. Porter, for trustees.
E. W. Kittredge, John Warrington, W. C. Bradley, D. S. Hounshell, and Mr. Templeton, for creditors.

TAFT, Circuit Judge. The receiver appointed under the general creditors' bill herein has been operating the railroad of the defendant company since March 18, 1893. By the 12th of January, 1899, when he pays the quarterly rental due at that time, he will have paid in money into the treasury of the city of Cincinnati $5,970,000, and to the trustees of the Cincinnati Southern Railway $72,000, or $6,042,000 in all. Nothing will then be due for rent from the defendant company to the city. In addition to this, he has expended large sums from his earnings in improving the condition of the

railroad, in accordance with the obligations of the lease. In October of this year he reported to the court that after deducting from the funds in his hands what was then due the city for rent on October 12th, and what was due to creditors of the receiver for current debts contracted in his operation of the road, he would have on hand $90,000 surplus for distribution to creditors of the defendant company, as the court might order. I am glad to be able to say that I am now advised by the receiver that upon January 1st next he will increase this surplus by $110,000, making a fund of $200,000 for distribution to other creditors; and the question is: How shall this fund be distributed? I have discussed, in considering the exceptions to the master's report, how the proceeds of the sale of the leasehold and the rolling stock of the defendant company must be distributed; but it remains to be decided whether a different rule shall be followed in distributing the net earnings.

It is contended that the net earnings must be distributed equally between all the creditors. It is said that there is a marked difference between the distribution of the proceeds of sale of all the property of the defendant company, and of the present fund, in that here the trustees are making no claim for rent under their mortgage, or their leasehold lien. It is argued that neither the eleventh section of the Kentucky enabling act of February 13, 1872, nor the general Tennessee railroad act of March 24, 1877 (upon which the judgment creditors of Kentucky and Tennessee found their claim of priority, and which I have set forth and discussed in an opinion filed to-day [91 Fed. 195] upon the master's report), secures to the judgment creditors of the class therein favored any specific lien; that these acts only postpone or invalidate mortgage priorities asserted; and that, when no mortgage priority is asserted, then there is nothing upon which such judgments may be preferred to other claims, whether in judgment or not. It is further contended that the benefit secured to judgments of the favored class by these acts is only to be enjoyed after such judgments have been made effective liens by the levy of execution and that not until then can mortgagees and other creditors be postponed to such judgments.

At the hearing I was much impressed with the weight of these suggestions, and was inclined to order an equal distribution. I was the more persuaded of the correctness of these arguments because the court of appeals of this circuit had expressly decided that the Tennessee act of March 24, 1877 (and the Kentucky act is quite similar in this respect), does not give to judgments of the favored class such a lien, attaching to the property of the railroad company, as to follow it into the hands of a grantee for value without notice. Railroad Co. v. Evans, 31 U. S. App. 432, 14 C. C. A. 116, and 66 Fed. 809; Guarantee Co. v. Hofstetter, 29 C. C. A. 35, 85 Fed. 75. On careful reflection I am convinced that my first impression was wrong, and that the judgments favored by the Kentucky and Tennessee laws must be first paid in full out of this net-earning fund. There is nothing in the decisions of the court of appeals referred to from which it is to be inferred that the priority over mortgage liens accorded to such judgments may not operate in the distribution of the assets of a rail-

way corporation upon a general creditors' bill, in which such judgments and mortgage debts are both set up with precisely the same effect as if the statute had given a specific lien. But for this general creditors' bill, these judgments in Tennessee might have been enforced by execution and sale of the rolling stock in that state, and, if the rolling stock did not suffice, then by execution and sale of so much of the leasehold interest as has a situs there; and such sales would have been free from any mortgage or other lien of the trustees for rent. The Tennessee proportion of the rolling stock and leasehold I have already found in a former opinion to be $^{137}/_{338}$ of the whole. In Kentucky the favored judgments might have been enforced by execution and sale of the rolling stock in the state, free from any mortgage or other lien of the trustees for rent. The Kentucky proportion of the rolling stock I have already found to be $^{197}/_{338}$ of the whole.

Now, a creditors' bill is merely an equitable levy and execution, for the benefit of all creditors, secured and unsecured, and the question of priority is to be settled in the same manner as if execution at law had been levied, at precisely the same time, as upon judgments duly rendered, for all claims found by the court to be just. By such an equitable levy and execution as the filing of this bill and the seizure of the property, therefore, the judgments in Tennessee and Kentucky of the favored class are given a priority, very like that of a senior lien, over the trustees' lien, upon the property of the defendant company in those states, and the trustees have a lien prior to the lien of all the other creditors. The surplus of earnings from the operation of the railroad property, over and above the cost of operating, belongs to the creditors for whose benefit the creditors' bill has been filed, in the same order of priority as must be preserved upon principles of equity in the distribution of the proceeds of the property operated upon sale. This must be so. Otherwise, the operation of the property could not be for the equal benefit of all creditors.

It follows, therefore, that because, out of the proceeds of sale of $^{137}/_{338}$ of the leasehold and rolling stock of the defendant company, the Tennessee creditors must be paid, prior to mortgage or lien claims of the trustees for rent and to all other claims, they must be accorded the same priority in respect of that same proportion of the net earnings. Now, the net earnings of this property have approximated $6,000,000 since the receivership began. The trustees have been paid their rent out of this, it is true; but, in considering the equities of the present distribution, we must assume the amounts already paid for rent as part of the fund here for distribution. The Tennessee judgment creditors of the favored class are entitled to have appropriated, out of this fund of $6,000,000, $^{137}/_{338}$ of the same to pay their claims. As the claims amount only to a little more than $12,000, this would certainly satisfy their claims in full. Without withholding any rent from the trustees, this can be paid out of the $200,000 now on hand for distribution. The judgment claims must be paid, with interest down to the date of distribution, which, for convenience, will be fixed as of January 3, 1899.

The distribution to the Kentucky judgment creditors of the favored class is the same, though the question as to them is a little different,

in this: Their priority extends only to the rolling stock, and not also to the leasehold estate, as did the priority of the Tennessee judgments. Upon the leasehold in Kentucky the trustees have a first and best lien for their rent. Now, the net earnings, after operating expenses, were the result of the joint use of the leasehold premises and the rolling stock. The leasehold and rolling stock in Kentucky together produced $197/338$ of the fund of $6,000,000 earned. The Kentucky judgment creditors, who have a priority in respect to the proceeds of the Kentucky rolling stock, are entitled to that part of $197/338$ of $6,000,000, or about $3,500,000, to satisfy their claims, which is equivalent to the ratio of the value of the rolling stock to the value of the rolling stock and leasehold in Kentucky. This is the same ratio as that of the whole rolling stock to the whole leasehold and rolling stock of the defendant company. To pay the Kentucky judgments in full will take something less than $70,000. The fund to be divided between the trustees and the judgment creditors is $3,500,000. Unless the leasehold and rolling stock together are worth more than 50 times the value of the rolling stock, the share of the judgment creditors in the fund will be enough to pay the claims of the Kentucky preferred creditors in full. If a reference is desired to show that the leasehold and rolling stock are not worth 50 times the value of the rolling stock, it can be had; but the court is sufficiently advised of the condition of the property to know that the rolling stock is worth at least $1,000,000. As the whole road was built for $19,000,000, it can hardly be that a lease of it, which has but seven years yet to run, with an annual rental burden of $1,102,000 a year for two years, and an annual rental burden for the five remaining years of $1,262,000, is worth $50,000,000. It therefore follows that the share which the Kentucky preferred creditors have in the net earnings will pay their judgments in full, with interest down to date of distribution, and this can be paid, without withholding any rent from the trustees, out of the fund ready for distribution January 3, 1899.

It will be seen, from the foregoing, that the suggestion that the preferred creditors from Tennessee and Kentucky cannot have any priority, because, with respect to the $200,000 here to be distributed, there is no claim made of mortgage priority to be postponed to them, is met by the sound proposition that, in determining what shall be paid out of net earnings to them, they are entitled to look to the fund of net earnings without deducting the rent, and to that fund the trustees certainly make a claim for their rental in full, by virtue of their mortgage and the lien reserved in the lease.

But it is urged that the rental had to be paid to prevent a forfeiture of the lease to the trustees and the city; that, but for this, no net earnings would have been earned, and therefore the rental paid inured to the benefit of the judgment creditors of Tennessee and Kentucky. Those creditors could have enforced their claims against the rolling stock whenever the trustees attempted to forfeit the leasehold and sell the rolling stock. They would not have been harmed by such a proceeding, because, by a separate sale of the rolling stock, they could have been certainly paid in full. They have not moved the court to sell the rolling stock separate from the leasehold, as they might have

done long ago; and now, when, by reason of their forbearance, the trustees have received their rent in full, and enough money has been earned to pay them in full, they, who might have insisted on payment out of the first net earnings, going to make up the great fund of $6,000,-000 since earned, must be paid.

The order will be that all Tennessee judgments for timbers furnished and work and labor, for personal injuries, and for injuries to property, and all Kentucky judgments for injuries to property and persons, and for breaches of contracts of affreightment, will be paid in full, with interest to January 3, 1899, and that out of the remainder of the fund a pro rata dividend will be paid to all the other creditors upon their claims, with interest down to January 1, 1898. This last date is fixed for convenience, because this was the date to which the master calculated interest on all claims. The case will be referred to the master, to report to the court the claims to be preferred and paid in full under this order, and the amounts, with interest to January 3, 1899, and also the dividends to be paid on other claims allowed, but not preferred. This report must be filed with all convenient speed. The master may have the assistance of the auditor of the receiver in the preparation of this report.

Since writing the above, the master has filed an additional supplemental report of more judgments against the defendant company, which may vary the figures I have given above; but they cannot change the principle to be applied in the distribution of the fund. The result of my conclusion, stated generally, is that, out of the $200,000 of earnings to be distributed, the Tennessee and Kentucky judgments of the preferred class will be paid in full, and the rest of the creditors of the defendant company will receive between 20 and 25 per cent. of their claims. If the railroad continues to earn money for the next year as it has during the past year, on or before January, 1900, all the claims will be paid in full. It is hoped that such a prosperous condition will enable the defendant company speedily to adjust its liabilities, and procure the dismissal of the bill and the lifting of the receivership. If not, then until a sale shall be had and confirmed, dividends will be distributed by the court at every quarter, if the net earnings over and above the rental due the city under the lease will permit it.