## PROVIDENT INSTITUTION FOR SAVINGS *v.* MAYOR & ALDERMEN OF JERSEY CITY.

### IN ERROR TO THE COURT OF CHANCERY OF THE STATE OF NEW JERSEY.

Submitted January 9, 1885.—Decided March 2, 1885.

An act which makes water rents a charge upon lands in a municipality, with a lien prior to all encumbrances, in the same manner as taxes and assessments, gives them priority over mortgages on such lands made after the passage of the act, whether the water was introduced on the lot mortgaged before or after the giving of the mortgage.

An act thus making water rates a charge upon lands in a municipality prior to the lien of all encumbrances, does no violation to that portion of the 14th Amendment to the Constitution which declares that no State shall deprive any person of property without due process of law.

It is not necessary in this case to decide as to the effect of such act upon mortgages existing at the time of its enactment ; but even in that case the court is not prepared to say that it would be repugnant to the Constitution.

This was a bill in equity filed in the Court of Chancery of New Jersey by the appellant, to foreclose two mortgages given to it on a certain lot in Jersey City by Michael Nugent and wife, and another person, the first being dated January

19, 1863, to secure the payment of $900 and interest, and the second, dated July 13, 1869, to secure the payment of $700 and interest. The complainants also claimed, under the stipulations of the mortgages, the amount of certain premiums of insurance paid by them. By an amended bill, making the Mayor and Aldermen of Jersey City a defendant, the complainants alleged that the city claimed a lien on the mortgaged premises prior to that of the mortgages, for certain water rents, for supplying water to the occupants of the same for the year 1871, and from thence to the time of filing the bill: that this claim was made under an act of the legislature of New Jersey, passed May 25, 1852, authorizing the construction of water works for the city, and the act revising the city charter, passed in March, 1871. The bill denied the validity of this claim, and averred that those portions of the said acts which purported to give such a priority had the effect to deprive the complainant of its property in the mortgaged premises without due process of law, and were in violation of the Constitution of the United States as well as that of New Jersey; and the complainant prayed for a foreclosure and sale of the lot in question as against all the defendants.

There was annexed to the bill and referred to therein a copy of the "Tariff of Rates and Regulations for the Use of Passaic Water; also Rules regulating the plumbing of houses and the tapping of Sewers;" being the regulations adopted by the Board of Public Works of Jersey City under the statutes referred to in the bill. The water rates specified in this tariff (except for measured water) were graduated in a table according to the width and number of stories of the houses, and were made payable annually in advance on the 1st of May in each year, with a penalty of three per cent. if not paid by the 1st of July, and interest at the rate of seven per cent. from the 20th of December. The regulations extend to many details, making provision for extra charges to certain kinds of establishments, providing penalties for misuse of the water, &c., &c.

The city authorities answered the bill, admitting that they had assessed upon the mortgaged premises the water rents set forth in the bill, and alleged that they were imposed in pur-

suance of an act of the legislature of New Jersey, entitled "An Act to authorize the construction of works for the supplying of Jersey City and places adjacent with pure and wholesome water," approved March 25, 1852, and an act entitled "An Act to reorganize the local government of Jersey City," passed March 31, 1871, and the supplements thereto ; and insisted that said water rents were a lien prior to the mortgages, and prayed that it might be so adjudged.

The other defendants made no defence.

The complainant and the city authorities entered into a stipulation to the effect, that the allegations of fact in the bill were to be taken as true; that, in the assessment of the water rents, interest and penalties, all the requirements of the act "to reorganize the local government of Jersey City," passed March 31, 1871, and the supplements thereto, had been complied with, and that the only question to be determined by the court was, whether upon the facts stated in the bill, the water rents and interest and penalties mentioned therein, or any of them, were liens upon the property in question prior to the lien of the complainant's mortgages.

The chancellor decided that the giving of a priority of lien to the water rents over the mortgages, pursuant to the statutes, did not deprive the complainant of its property without due process of law, and did not otherwise conflict with the Constitution of the United States, or with that of New Jersey ; and he decreed that, for the purpose of raising the money due on the mortgages, the mortgaged premises must be sold subject to such lien, and that the bill must be dismissed as against the city. This decree, being appealed from, was affirmed by the New Jersey Court of Errors and Appeals, and the record was remanded to the Court of Chancery. The case is brought here by writ of error, and the errors assigned resolve themselves into the single error of sustaining the priority of the lien of the water rents over that of the complainant's mortgages.

*Mr. Charles H. Hartshorne* for appellant.—Water rents are not assessments for special benefits. This has been often adjudicated in New Jersey. *State* v. *Jersey City*, 12 Vroom (41 N.

J. Law), 471, 476; *State, Vreeland* v. *Jersey City,* 14 Vroom (43 N. J. Law), 135. Nor are they taxes. This point has also been adjudicated by all the superior courts of New Jersey. All such rents levied since September, 1875, are, so far as levied as taxes, void under the amendment to the State Constitution adopted at that time. *State, Vreeland* v. *Jersey City,* cited above; *State, Culver* v. *Jersey City,* 16 Vroom (45 N. J. Law), 256; *Provident Institution* v. *Allen,* 10 Stewart (37 N. J. Eq.) 36. Water rents, where water has been used on the premises, can only be maintained against the owner upon the ground of an implied contract by the owner to pay for what he uses. The statute gives a special lien to the city to secure the price of the water so sold. This was settled by *Vreeland* v. *O'Neil,* 9 Stewart (36 N. J. Eq.) 399; *S. C.* on appeal under the name of *Vreeland* v. *Jersey City,* 10 Stewart (37 N. J. Eq.) 574. This adjudication, being upon a question of local law, between citizens of the same State, will be accepted as conclusive by this court. The city, thus claiming under a contract only, and not under the power of taxation, stands on the same ground as an individual or private corporation, and is entitled to no greater privileges than those to which an individual would be entitled who claimed under a similar contract with similar statutory privileges. This consideration distinguishes this case from *Murray* v. *Hoboken Land and Improvement Co.,* 18 How. 272. The statutes deprive the mortgagee of its property without due process of law, where the property is insufficient to satisfy both liens, in so far as they purport to postpone the lien of the mortgages to the lien of subsequently assessed water rents. They also deprive the mortgagee of its property without due process of law, in so far as they authorize the summary proceedings for collecting taxes to be used against mortgagees to collect water rents. The mortgagee's right of priority is a right of property. The destruction of that priority is a deprivation of property. Among the incidents of property are the right of a mortgagee to bring ejectment (the mortgage being overdue before the assessments of water rents), *Osborne* v. *Tunis,* 1 Dutcher, 633; the right to enjoin or sue for waste, *Jackson* v. *Farrell,* 10 Vroom 329; and the right to foreclosure and sale, *Parker* v. *Child,* 10 C. E.

Green (25 N. J. Eq.) 41. It will not be denied that these rights are property, protected by the constitutional guaranty. It is equally clear that the right of priority over subsequent liens is an element of that right of property. The following cases are cited to show the kind of rights which courts treat as protected by this constitutional provision: *Lavin* v. *Emigrant Industrial Savings Bank*, 18 Blatchford, 1; *Ridlon* v. *Cressey*, 65 Maine, 128; *Burke* v. *Mechanics' Saving Bank*, 12 R. I. 513; *Sinking Fund Commissioners* v. *Bank of Kentucky*, 1 Met. (Ky.) 174; *Trustees of Public Schools* v. *Trenton*, 3 Stewart (30 N. J. Eq.) 677. The statutes further deprive the mortgagee of its property without due process of law, in so far as they allow the machinery for collecting taxes to be applied against the mortgagee to the collection of water rents. It is an attempt to exercise the taxing power to collect a private debt, which cannot be done. Cooley, Constitutional Limitation, 362, 463, 490; *Ames* v. *Port Huron Co.*, 11 Mich. 147; *Glover* v. *Powell*, 2 Stockton, 211; *Rockwell* v. *Nearing*, 35 N. Y. 302; *Parsons* v. *Russell*, 11 Mich. 114; *Coit* v. *Waples*, 1 Minn. 134; *Johnson* v. *Van Horn*, 16 Vroom (45 N. J. Law), 136. No assent, by the mortgagee, to the provisions of the act of 1852, postponing the mortgage lien to the lien of the subsequently assessed water rents, can be inferred from the acceptance of the mortgages, after the passage of that act. There has been no waiver, on the part of the mortgagee, of the priority of his lien. He had no freedom of choice. It is not denied that property is held subject to laws enacted in accordance with the Constitution; but in the language of the court in *Lavin* v. *Industrial Savings Bank*, 18 Blatchford, 1, cited above: "The State cannot take away from property the essential character of property. It cannot, under cover of the exercise of the police power, make property already acquired, or thereafter to be acquired, subject to be taken away from its owner without due process of law. It could not pass a general law providing, as to all after-acquired property, that it should be held on the tenure or condition, that, in certain prescribed cases, it should be taken from the owner and given to another, without any form of judicial proceeding, without notice or an opportunity

to be heard.   A construction which would allow this would, in effect, allow a State, by law, to abrogate, within its limits, the institution of property altogether; and although it is true, that that which a man has not cannot be taken from him, yet the necessary implication of the amendment is that '*property*,' as generally understood, with all its necessary incidents, shall forever be preserved, within the limits of the Union."

*Mr. William Brinkerhoff* for defendants in error.

Mr. Justice Bradley delivered the opinion of the court.  He recited the facts as above stated and continued :

The ground on which the decision below was placed was, that the laws having made the water rents a charge on the land, with a lien prior to all other encumbrances, in the same manner as taxes and assessments, the complainant took its mortgages subject to this condition, whether the water was introduced on to the lot mortgaged before or after the giving of the mortgage; and hence the complainant had no ground of complaint that its property was taken without due process of law.

We do not well see how this position can be successfully controverted.   The origin of the city's right to priority of lien goes back to the year 1852, when the legislature passed the act "to authorize the construction of works for supplying Jersey City and places adjacent with pure and wholesome water."   That act laid the foundation of a scheme for leading water from the Passaic River to Jersey City, a distance of seven or eight miles, across the channel of the Hackensack River, and over the ridges of Lodi and Bergen.   Power was given to a board of commissioners appointed for that purpose, to take the necessary lands by right of eminent domain, to borrow money on the credit of the city, to lay pipes through the streets, and to make all necessary and proper regulations for the distribution and use of the water, and "from time to time to fix the price for the use thereof and the times of payment;" and by section 14 of the act, it was declared "that the owner and occupier of any house, tenement or lot, shall be liable for the

payment of the price or rent fixed by the commissioners for
the use of the water by such occupier, and such price or rent
so fixed shall be a lien upon said house, tenement or lot, in the
same way and manner as other taxes assessed on real estate in
Jersey City are liens, and shall be collected in like manner."
This law has been substantially continued to the present time.
On a revision of the city charter in 1871, the Board of Water
Commissioners was replaced by a Board of Public Works, in-
vested with the same powers and duties; and by section 81 of
the revised charter, after providing for the fixing of the water
rents as in the act of 1852, it was, amongst other things, further
enacted as follows:

"And the said board shall from time to time determine and
give public notice of the times and places at which the said
water rents shall be due and payable, and the penalties to be
charged for delaying the payments beyond the times so fixed;
and the said water rents shall, until paid, be liens upon the
property charged therewith; and the said board may, at any
time after the twentieth day of December, in each year, deliver
to the Board of Finance and Taxation of Jersey City, an
account certified under the hand of the president, of all such
water rents and penalties for delinquency as are then due and
remain unpaid; and the said Board of Finance and Taxation
shall, upon receiving said certified account, cause said lands to
be sold for the payment of said water rents and penalties, and
the interest thereon, from said twentieth day of December, at
the rate of twelve per centum per annum, and also costs, charges
and expenses of advertising and sale in the same manner as
said Board of Finance and Taxation may be authorized by law
to sell lands in said city for the payment of taxes thereon, and
said proceedings and the effect thereof, shall be the same in all
things as if the said lands were sold for taxes."

By section 151 of the same charter it was enacted (substan-
tially as the law had been since the year 1839) " that all taxes
and assessments which shall hereafter be assessed or made
upon any lands, tenements or real estate situate in said city,
shall be and remain a lien thereon from the time of the con-
firmation thereof until paid, notwithstanding any devise,

descent, alienation, mortgage or other encumbrance thereof; and that if the full amount of any such tax or assessment shall not be paid and satisfied within the time limited and appointed for the payment thereof, it shall and may be lawful for the Board of Finance and Taxation to cause such lands, tenements or real estate to be sold at public auction, for the shortest term for which any person will agree to take the same and pay such tax or assessment, or the balance thereof remaining unpaid, with the interest thereon, and all costs, charges and expenses." And it was provided: "That all moneys paid for the redemption of said lands, tenements or real estate as aforesaid, together with such taxes and assessments as shall be paid by a mortgagee or other creditor, under a judgment, attachment or mechanic's lien, shall be a lien on said lands, tenements or real estate for the amount so paid, with interest at the rate of seven per centum per annum; and such lien shall have precedence of all other liens on said lands, tenements or real estate; and on foreclosure of any mortgage by such mortgagee redeeming, shall be directed to be made out of said lands, and on sale of said lands under any such judgment, attachment or mechanic's lien, shall be paid out of the proceeds of sale."

These extracts are sufficient to show the general character of the system by which the water rates are imposed and enforced in Jersey City. Much discussion has taken place in the State courts as to the precise nature of these water rents: whether they are a tax, or an assessment for benefits, or a stipulated compensation resting on implied contract. If regarded as taxes, they have been supposed to conflict with a clause in the State Constitution, adopted in 1875, declaring that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." If regarded as special assessments for benefits arising from a public improvement, they have been held as open to the objection of not being laid on correct principles—being distributed according to the dimensions and measurements of the several lots and buildings, and not according to the benefits received. These objections were held to be conclusive in the case of water rents imposed on unoccupied lots, and lots not supplied with water; both the

act of 1852, and the revised charter of 1871, having provided for the imposition of water rents on property of that kind, situated on streets in which water pipes were laid. The Supreme Court of the State has decided that under the State Constitution this imposition cannot be sustained; because, for the reasons just stated, it is neither valid as a tax, nor as a special assessment for benefits. *State* v. *Jersey City*, 14 Vroom, 135. But the rents imposed for water actually used, as in the case now under consideration, have been held valid on the ground of an implied contract to pay them. The terms being public and well known, persons applying for a supply of water are supposed to assent to them. *Vreeland* v. *O'Neil*, 36 N. J. Eq. (9 Stewart), 399; *S. C.* on appeal, 37 N. J. Eq. (10 Stewart), 574.

As the case comes before us, it is not necessary to enter into the discussions that have occupied the State courts. We are to assume that the rents, penalties and interest claimed by the city have been imposed and incurred in conformity with the laws and Constitution of the State; and that, by virtue of said laws and Constitution, they are a lien on the property mortgaged to the complainant prior to that of its mortgages; and, this being so, we are only concerned to inquire whether those laws thus interpreted are, or are not, repugnant to the Constitution of the United States. The only clause of the Constitution supposed to be violated is that portion of the 14th Amendment which declares that no State shall deprive any person of life, liberty, or property without due process of law. It is contended that the mortgages created in 1863 and 1869, there being then no valid water rents due on the lot mortgaged, invested the complainant with the first lien thereon, and that that lien is property; and that the statutes of 1852 and 1871, by giving a superior lien to water rents afterwards accrued, deprive it of its said property without due process of law.

What may be the effect of those statutes, in this regard, upon mortgages which were created prior to the statute of 1852, it is unnecessary at present to inquire. The mortgages of the complainant were not created prior to that statute, but

long subsequent thereto. When the complainant took its mortgages, it knew what the law was; it knew that, by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgages subject to this law; and it is idle to contend that a postponement of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act, its own consent, is an element in the transaction. The cases referred to by counsel to the contrary, holding void a consent exacted contrary to the Constitution, have no bearing upon the present cases.

It may, however, be contended (though it is not by the counsel in this case), that the revised charter of 1871 introduced new impositions, additional to the mere water rent, such as authorizing a penalty to be imposed by the Board of Public Works, if payment of the water rents were not made by a certain time, and a heavy rate of interest on rents continuing in arrear. But we look upon these provisions as merely intended to enforce prompt payment, and as incidental regulations appropriate to the subject. The law which authorized these coercive measures gave to mortgagees and judgment creditors the right to pay the rents and to have the benefit of the lien thereof; so that it was in their own power to protect themselves from any such penalties and accumulations of interest. They are analogous to the costs incurred in the foreclosure of the first mortgage, which have the same priority as the mortgage itself over subsequent encumbrances.

In what we have now said in relation to the anterior existence of the law of 1852 as a ground on which this case may be resolved, we do not mean to be understood as holding that the law would not also be valid as against mortgages created prior to its passage. Even if the water rents in question cannot be regarded as taxes, nor as special assessments for benefits arising from a public improvement, it is still by no means clear that the giving to them a priority of lien over all other encumbrances upon the property served with the water would be re-

pugnant to the Constitution of the United States. The law which gives to the last maritime liens priority over earlier liens in point of time, is based on principles of acknowledged justice. That which is given for the preservation or betterment of the common pledge is in natural equity fairly entitled to the first rank in the tableau of claims. Mechanics' lien laws stand on the same basis of natural justice. We are not prepared to say that a legislative act giving preference to such liens even over those already created by mortgage, judgment or attachment, would be repugnant to the Constitution of the United States. Nor are we prepared to say that an act giving preference to municipal water rents over such liens would be obnoxious to that charge. The providing a sufficient water supply for the inhabitants of a great and growing city, is one of the highest functions of municipal government, and tends greatly to enhance the value of all real estate in its limits; and the charges for the use of the water may well be entitled to take high rank among outstanding claims against the property so benefited. It may be difficult to show any substantial distinction in this regard between such a charge and that of a tax strictly so called. But as the present case does not call for an opinion on this point, it is properly reserved for consideration when it necessarily arises.

The decree of the Court of Errors and Appeals of New Jersey is *Affirmed.*