KING et al. v. THOMPSON et al.

(Circuit Court of Appeals, Sixth Circuit, June 10, 1901.)

No. 896.

1. APPEAL—PARTIES—ALLOWANCE IN OPEN COURT.

The allowance of an appeal in open court at the same term at which the decree is entered binds all parties to the record, and brings into the appellate court all parties necessary to a determination of the rights of the appellant, without the necessity of citation or severance.

2. SAME—SUFFICIENCY OF BOND.

An appeal bond is sufficient, although signed by one only of two or more appellants, where good and sufficient security is taken, and approved by the judge of the trial court.

3. RAILROADS—MORTGAGES BY FOREIGN CORPORATION—PRIORITY OF JUDGMENTS UNDER OHIO STATUTE.

Rev. St. Ohio 1880, §§ 3393–3400, inter alia authorize the reorganization of railroad companies, and the execution by them of mortgages and deeds of trust, but provide that the lien of such mortgages and deeds of trust shall be postponed to the lien of judgments recovered against the reorganized company for labor or materials, or for damage losses or injuries suffered or sustained through the misconduct of its agents, etc. They further provide (section 3399) that: "A corporation of another state possessing a railroad which is partly in such other state and partly within this state may exercise and enjoy within this state all its powers, privileges, faculties and franchises for the purpose of such railroad and its business, not inconsistent with the laws of this state; and all mortgages and deeds of trust made by such corporation upon its railroad, equipments or other property within this state shall operate in the same manner and with the like effect as hereinbefore provided with respect to companies so reorganized." *Held*, that it was within the powers of the legislature to attach such conditions to the right given to foreign corporations to mortgage railroad property within the state, and that the effect of such provision was to postpone the lien of mortgages executed after its enactment by a company of another state, a part of whose road was in Ohio, as to such part, to judgments obtained against it in the state for personal injuries.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

The facts in this case, so far as it is necessary to state the same with a view to an understanding of the questions involved, are as follows: In 1881 the Pittsburg & Western Railroad Company, a corporation of the state of Pennsylvania, was organized. It subsequently leased the lines of certain railroads in Ohio. It also had a part of its line in the state of Pennsylvania, and operated altogether a line from Pittsburg to Akron, Ohio. The Pittsburg & Western Railroad Company having made default in the interest due on its mortgage bonds, a decree was entered on April 23, 1887, in the United States circuit court at Pittsburg, and a similar decree entered April 27, 1887, in the Northern district of Ohio, whereby all the property of the Pittsburg & Western Railroad Company was sold to a certain committee. On June 25, 1887, the purchasers, under the laws of Pennsylvania, organized a new railroad company, known as the Pittsburg & Western Railway Company, and subsequently the property purchased at the sale of the Pittsburg & Western Railroad Company was transferred to the Pittsburg & Western Railway Company, which is a corporation of the state of Pennsylvania. By the ownership of a part of the line in Pennsylvania and the acquired leasehold interest and rights of the former company, the Pittsburg & Western Railway Company became possessed of a railroad partly in Pennsylvania and partly in Ohio, which it continuously operated until a receiver was appointed in certain foreclosure proceedings commenced on March 2, 1896, in which Thomas M. King was appointed receiver. Proceedings were also begun, ancillary to the principal suit in the Western district of Pennsylvania, in the Northern district of Ohio. In 1887 the Pittsburg & Western Railway Company issued and sold bonds to the amount of $10,000,000, secured by mortgage on all its property in Pennsylvania and Ohio. On May 25, 1891, it issued a second mortgage, under which bonds to the amount of $2,500,000 have been sold. The intervening petitioners, Samuel M. Thompson, guardian of Frank H. Wakelee, and Robert Smith, guardian of Mary Grace Davis, filed their intervening petitions in the foreclosure proceedings in the Northern district of Ohio, claiming priority under the Ohio statute over the mortgages thus made by the Pittsburg & Western Railway Company. On these intervening petitions the matter came on to be heard at the April term, 1900, of said court. On consideration the court found that at the October term, 1895, Frank H. Wakelee, by Samuel M. Thompson, his said guardian, recovered a judgment against the Pittsburg & Western Railway Company in the sum of $14,000, which judgment was recovered on account of personal injuries suffered or sustained on or about the 4th day of October, 1892, directly on account of the fault, neglect, and misconduct of said the Pittsburg & Western Railway Company, and of its officers and agents. The court further found that on the 5th day of November, 1898, said Mary Grace Davis, by her said guardian, Robert Smith, recovered in said court against the Pittsburg & Western Railway Company the sum of $10,000 for personal injuries sustained in like manner on or about the —— day of March, 1893. And the court further found that the Pittsburg & Western Railway Company ever since 1887 has been a corporation of the state of Pennsylvania; that said company was organized by four purchasers at judicial sale of the railroad property, rights, and franchises, under authority of the statutes of the state of Pennsylvania; also that said Pittsburg & Western Railway Company operated a railroad in the states of Ohio and Pennsylvania, and held that the judgments constituted a first lien on the property in the state of Ohio, superior to the mortgages and liens executed by said Pittsburg & Western Railway Company, and were entitled to be paid first from the proceeds of sale of the property in Ohio; that the lien of said mortgages was postponed to the liens of said judgments, and inferior to them in law and in equity; and a decree for their payment from the proceeds which might arise from a judicial sale of the property in Ohio was made accordingly.

A. W. Jones, for appellants.
George F. Arrel, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

Preliminary questions have been argued concerning the sufficiency of the bond and undertaking to bring this case in review before this court, and it is alleged that the assignments of error are insufficient. We have examined these assignments, and, while they are open to criticism as not being entirely specific, nevertheless, in view of the importance of the principal question presented, and the view we take of the case, we have concluded to look into this record, notwithstanding the alleged defects in the manner in which the assignments are made. It is also urged that the Pittsburg & Western Railway Company, defendant in the original foreclosure proceeding, is a necessary party to this appeal. Conceding, without deciding, that such is the case, the notices of appeal by the Mercantile Trust Company and King, receiver, were given and appeal allowed in open court at the time of the entry of the decree in the case upon the intervening petitions. In such case there is no necessity to issue a summons and take an order of severance for a party not joining in the appeal. The appeal was taken in open court at the time the decree was entered. The railway company and other parties were presumably present, and bound to take notice thereof. They then had an opportunity to join in the appeal, if they desired to do so, and by refraining they signify their purpose not to appeal. In such case no citation is necessary. The parties are already in court, and the action of the court binds all the parties to the suit. An appeal allowed in this manner binds all the necessary parties to the appeal, without citation or summons and severance. They have constructive notice of the appeal, and may join therein at their election. In this case the receiver's appeal raises all the questions which the railroad company would raise by its separate appeal, and by its silence it signifies a willingness to let his appeal settle the rights of the parties. This was expressly ruled in McNulta v. Com'rs, 39 C. C. A. 545, 99 Fed. 328; Rice Co. v. Libbey, 105 Fed. 825, decided in the circuit court of appeals for the Seventh circuit, and we are disposed to concur in the conclusions therein reached.

The objections made to the bond for appeal is that it is not signed by the trust company, one of the appellants. The bond is signed by one of the appellants, with sufficient sureties thereon, and was duly approved by the circuit judge allowing the appeal. The statutory obligation is fulfilled when good and sufficient security is taken. McClellan v. Pyeatt, 1 C. C. A. 241, 49 Fed. 259.

This brings us to the principal question in the case: Do the judgments recovered against the Pittsburg & Western Railway Company under the statutes of Ohio have preference in payment over the mortgages executed and delivered by said company which are the subject of foreclosure in the original proceedings herein? In 1861 the legislature of Ohio passed a law entitled "An act to regulate the sale of railroads and the reorganization of the same." 58 Ohio Laws, p. 70, passed April 11, 1861. This act, with some minor

changes not necessary to be noticed now, was incorporated into the Revised Statutes of Ohio of 1880 (sections 3393–3400), which sections are given in a ·note at. the end of this opinion. The act of April 11, 1861, while it purported to be for the regulation of the sale of railroads and .their reorganization, undertook in section 7 (now 3399, Rev. St. Ohio), to make certain regulations with reference to corporations having railroads partly within and partly without this state. While the constitution of Ohio provides that no bill shall contain more than one subject, which shall be clearly expressed in its title, this provision has been held by the supreme court of Ohio to be only directory to the legislature, and other subjects than those mentioned in the title have been frequently included. Pim v. Nicholson, 6 Ohio St. 176. A principal purpose of this act was to provide for the reorganization of railroad companies when proceedings are pending in a court of the state for the sale of the same, and permits a reorganization upon written agreement of two-thirds in interest of the creditors and two-thirds in interest of the stockholders of the company. When the stockholders and creditors have agreed in writing upon a plan of reorganization, a judgment or decree is to be entered, which shall become a lien upon all the property and upon all the franchises and powers of the company; but the unsecured debtors of the company, holding certain claims, may be paid in bonds of the reorganized company. Trustees on behalf of the parties to said agreement are to meet not less than once a week for four consecutive weeks, in pursuance of notice in newspapers printed in New York and Philadelphia and each county on the line of the railroad. In the reorganization meeting parties to the agreement are permitted to vote, not exceeding one vote for every $50 par value of the stock held by such party, and at said meeting a majority of the persons present may change the name of the corporation, fix the number of directors, and perform other duties specified in the statute. On reorganization the title and franchises and property of the railroad of the original company are vested in the reorganized corporation. The corporation is given power, at any time within six months after the reorganization, to assume such debts of the original company, to make such adjustment with the. bondholders of the original company or its stockholders as it may deem expedient, with power to issue bonds, and secure same by deeds of trust, and may establish preferential stock, and confer upon the holders of any bonds which it may issue or assume to pay a right to vote for every $50 par value of each bond. These unusual privileges and rights given to the reorganized company, particularly the right of the bondholders to act in the corporation, and take part in the management with equal privileges with stockholders, undoubtedly led the legislature to adopt section 6 of the original law, now section 3398 of the Revised Statutes of Ohio, to wit:

"The lien of the mortgages and deeds of trust authorized to be made by the preceding section shall be postponed to the lien of judgments recovered against the company, after its reorganization, for labor thereafter performed for it, or for materials or supplies thereafter furnished to it, or for damages, losses, or injuries thereafter suffered or sustained by ·the misconduct of its agents, or in· any action founded on its contracts or liability as a common carrier thereafter made or incurred."

That is, claims of this meritorious class were not to be superseded in right of payment by liens created after the reorganization, in favor of persons controlling the corporation. Recognizing that a railroad organized outside of the state might wish to avail itself of the provisions of this act, it was enacted in section 7, now section 3399, that the provisions of this act should extend and apply to corporations whose railroads are partly within and partly without the state. It gave to such corporations, whether incorporated under the statutes of this state or otherwise, the privilege of reorganizing under this law, and it is also provided that a corporation of another state, possessing a road partly within and partly without the state, may exercise and enjoy within this state all its powers, privileges, faculties, and franchises for the purpose of such railroad and its business, not inconsistent with the laws of this state; and then follows this important provision: "And all mortgages and deeds of trust made by such corporation upon its railroad, equipments, or other property within this state, shall operate in the same manner and with the like effect as hereinbefore provided with respect to companies so reorganized;" and it is further provided that "such part of the railroad as is within this state shall be subject to taxation, and to all regulations of law, in the same manner as railroads of this state in like cases and the corporations owning the same shall be subject to all duties in respect thereto imposed by law, and may sue and be sued in all cases and in the same manner as a company of this state might sue or be sued." Giving this language its plain meaning, gathered from the terms used, we find this act not only providing a plan of reorganization of which corporations owning railroads partly within and partly without this state may avail themselves, but giving such corporations the right to mortgage property within this state. In this section (3399), providing for the operation of mortgages and deeds of trust, the act affects not only railroads reorganized under the other sections, but extends to corporations of another state possessing a railroad which is partly in such other state and partly within this state, whether reorganized under the act or not, whose mortgages upon property within this state are to operate in the same manner, and with like effect, as provided in the act with respect (in the original act) "to those corporations reorganized under this act" (in the Revised Statutes), "with the like effect as hereinbefore provided with respect to companies so reorganized,"—equivalent expressions, giving to the securities of such corporations the same operation as the law gives to those of a corporation which has availed itself of the right to reorganize thereunder. It is said that this construction gives an operation to such mortgages different than is given to the mortgages of domestic railroad corporations not recognized under the act, or those of foreign corporations which do not come within the terms of the law. This entire subject is within legislative control, and the right to fix legislative limitations on the privilege of foreign corporations to mortgage their property in the state is undoubted. The meaning of the language used is plain, and gives little occasion for judicial construction. That the section (St. April 11, 1861) embodied in section 3399 of the Revised Statutes of

Ohio has an effect beyond provisions for reorganizations thereunder is manifest from a decision of the supreme court of Ohio in the case of State v. Sherman, 22 Ohio St. 411. In that case, while the supreme court of Ohio held that the Pittsburg, Fort Wayne & Chicago Railway Company was not a corporation of the state of Ohio, it also held that it had a right, as a foreign corporation, to maintain and operate its road within the state, and in that connection Chief Justice Welch, who delivered the opinion of the court, used this language:

"There is not only no law of Ohio prohibiting the ownership and use of railroads in the state by foreign corporations, and no public policy of the state to be contravened thereby, but there is abundant legislation directly to the contrary. The legislation brought in review by the agreed statement in this case abundantly shows that the policy of the state has been and is not only to permit, but to invite and encourage, such ownership and use, and to place foreign companies, in this respect, on a perfectly equal footing with domestic companies. It would be strange were it otherwise. To invite their co-operation in works of great public concern, and then discriminate against them in point of right to use and enjoy their property in the state, would not only be unjust to them, but unwise for the state. If any discrimination does exist, it is in regard to the power of condemning and appropriating private property to the use of the roads. In this case we find what we construe to be an express grant of that power. The Pennsylvania act incorporating the defendants gives them power to condemn and appropriate private property, and by section 7 of our act of April 11, 1861, it is provided that 'a corporation of another state possessing part of a railroad which is partly in such other state and partly within this state, may exercise and enjoy within this state all its powers, privileges, faculties, and franchises for the purpose of said railroad and for its business, not inconsistent with the laws of this state and the provisions of said act.' This provision clearly gives the right to condemn and appropriate private property in Ohio, to all railroad corporations of other states, which have the power of condemnation and appropriation given them in their charters of incorporation, and whose roads lie partly within this state."

In other words, the chief justice found in section 7 of the act of April 11, 1861, above quoted, the broad power conferred upon corporations of another state possessing a railroad partly within and partly without the state to exercise all their powers, including the right of eminent domain. It is argued in this connection that so much of section 3399 as provides that foreign corporations of the class named shall be liable to taxation and to all regulations of law as railroads of this state, places foreign corporations on an equality with domestic corporations, and, except when reorganized under this statute, such foreign corporation has the right and power to make mortgages which do not yield to the class of claims mentioned in section 3398. When general language is used in a statute providing general regulations, it is familiar law that it must yield in force and effect to a specific provision upon the same subject. The mortgages in foreclosure in this proceeding were executed long after this statute passed, and in such case, as was said by Chief Justice Fuller, in construing a somewhat similar statute in Georgia in the case of Railway Co. v. Bouknight, 17 C. C. A. 181–185, 70 Fed. 442, 30 L. R. A. 823: "The law enters into and becomes a part of the contract, as if it were there in express terms." Brine v. Insurance Co., 96 U. S. 634, 24 L. Ed. 858; Insurance Co. v. Cushman, 108 U. S. 51, 2 Sup. Ct.

236, 27 L. Ed. 648; Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 5 Sup. Ct. 612, 28 L. Ed. 1102; Railroad Co. v. Hamilton, 134 U. S. 301, 10 Sup. Ct. 546, 33 L. Ed. 905. In this opinion the chief justice also quotes 'with approval the following language of Justice Bradley in Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 5 Sup. Ct. 612, 28 L. Ed. 1102:

"What may be the effect of those statutes, in this regard, upon mortgages which were created prior to the statute of 1852, it is unnecessary at present to inquire. The mortgages of the complainant were not created prior to that statute, but long subsequent thereto. When the complainant took its mortgages, it knew what the law was. It knew that by the law, if the mortgaged lots should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lots. It chose to take these mortgages subject to this law, and it is idle to contend that a postponement of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act—its own consent—is an element in the transaction."

We have no doubt that the mortgages in question, in so far as they covered property in the state of Ohio, were subject to the rules and regulations prescribed by the statutes of Ohio, and that the mortgagees must be presumed to have assented to the right of the state to regulate mortgages given upon property within its borders, and in force at the time the securities were given.

We think, therefore, that by proper construction this statute, permitting foreign railroad corporations of a certain class to transact business in Ohio, has expressly included in its regulations that mortgage liens upon the property within the state shall be postponed to judgments recovered upon the demands stated in the statute. We think the learned judge did not err in holding that the judgments of this class in this case were prior liens, and that he properly concluded that they were entitled to payment out of the proceeds of the sale of the property of the Pittsburg & Western Railway Company in Ohio in preference to mortgages executed by that company. The judgment is therefore affirmed.

### NOTE.

Sections 3393 to 3400, inclusive, of the Revised Statutes of Ohio of 1880, referred to in the opinion, read as follows:

"Sec. 3393. When proceedings are pending in any court for the sale of the road of a company, under a mortgage or deed of trust, and two-thirds in interest of the creditors and two-thirds in interest of the stockholders of the company agree, in writing, upon a plan for the readjustment or capitalization of the debt and stock of the company, the court shall render judgment against the company for the amount due and in arrear upon such securities, which judgment shall, from its rendition, become a lien on all the property embraced in such securities, and upon all the franchises and powers of the company, including its franchise to be and act as a corporation, conferred by the charter and the amendments to the charter of the company; and upon a sale had under such judgment, and a purchase at such sale by trustees on behalf of the parties to such agreement, appointed by the agreement, all the property so bound by the judgment, including said franchises, shall vest in such trustees; but every such agreement shall provide that the unsecured debts of the company, incurred for repairs or running expenses, shall be paid in money, or bonds of the reorganized company of the highest class issued, as hereinafter pro-

vided; and a copy of this agreement shall be filed in such court before the rendition of the judgment.

"Sec. 3394. The trustees shall, as soon as practicable after the sale, call a meeting of the parties to the agreement by a notice signed by a majority of the trustees, or of their survivors, and published not less than once a week for four consecutive weeks in a newspaper printed in the cities of New York and Philadelphia, and in a newspaper printed in each county on the line of the railroad, specifying the day, place and object of such meeting—the place to be on the line of the railroad. At such meeting each of the parties to the agreement shall be entitled to vote according to the provisions thereof, but not exceeding one vote for every fifty dollars of the par value of the debt or stock of such party, according to a list of voters and of their respective interests, which shall be prepared by the majority of the trustees, who are empowered to act as judges of the election; such meeting, by a majority in interest of the persons present, in person or by proxy, shall be competent to retain or change the name of the company, to decide for the time being the amount of its capital and the number of shares into which such capital shall be divided, to fix the number of directors and their term of office, to elect such directors, a majority of whom shall be residents of the state or states in which such railroad is situate, and to do all things necessary or proper to reorganize the company; but any creditor shall be entitled to become a party to the agreement aforesaid, either at or any time before the meeting in this section provided for, and any stockholder shall be entitled to become a party to such agreement at any time within one year after such meeting.

"Sec. 3395. A certificate, under the common seal of the company, specifying its name and the railroad which it is to hold, maintain and operate, shall be filed in the office of the secretary of state; and a copy of such certificate, duly certified, shall, in all courts and places, be evidence of a compliance with all the conditions and provisions of the two preceding sections, and of the due reorganization and existence of the company.

"Sec. 3396. Upon such reorganization and a conveyance by the trustees, or of such of them as shall be vested with the legal title, or their survivors, all the railroad and other property and franchises and things purchased as aforesaid, and all the franchises, powers, faculties, privileges and immunities which were possessed or enjoyed by the original company, or by any company with which it had been consolidated, shall pass to and be vested in the company as reorganized; and the same, and all property and things which the reorganized company shall thereafter acquire, except as hereinafter provided, shall be taken, held and disposed of for the use and benefit of the creditors and stockholders of the company, who shall have become such upon and after such reorganization, according to their respective rights, but subject to the powers of the company, and shall be in no wise chargeable in respect to any debt, liability or claim of any creditor or stockholder which subsisted prior to the sale and reorganization herein provided for, but all property of the original company not embraced in the sale shall, upon the reorganization, be vested in the company as reorganized, in trust for all parties interested therein as creditors, stockholders or otherwise.

"Sec. 3397. Such company shall likewise have power, at any time within six months after the organization, to assume such debts or liabilities of the original company, and to make such adjustments or exchanges with any bondholder of the original company, and, within one year, with any stockholder, as it may deem expedient, and may use for such purpose any bonds or stock which it may be authorized to issue or create; and it may make and issue such bonds, payable at such times and places, and bearing such rates of interest not exceeding 6 per centum per annum, as it may deem expedient, and may secure the payment of any bonds which it may issue or assume to pay by mortgages or deeds of trust of its railroad, or any other of its property, real or personal, and may include therein with its road all its cars and other rolling stock and equipments, and any machinery, tools, implements, fuel, materials, and all other things then held or thereafter acquired for constructing, operating or repairing the road, or

for repairing or replacing any of its equipments or appurtenances as part and parcel of the road and as constituting with the road one property, and may include in such mortgages or deeds of trust all franchises held by the company and connected with or related to the road, and all other corporate franchises of the company, all which franchises, including the franchise to be a corporation, in case of sale by virtue of any such mortgage or deed of trust, or of any judgment specified in the next section, are hereby declared to pass to the purchasers, so as to enable them to reorganize the company in the manner hereinbefore provided; and such company may issue capital stock to such aggregate amount as it may deem proper, not exceeding any limit which may be fixed by agreement with the trustees purchasing as aforesaid, and may establish preferences in respect to dividends, in favor of any class of the stock, in such order and manner as it may deem expedient, not exceeding such limit as may be fixed by agreement as aforesaid; and may, if authorized by the agreement, confer on holders of any bonds which it may issue or assume to pay, such rights to vote at all meetings of stockholders, not exceeding one vote for every fifty dollars of the par amount of the bonds, as may have been provided for in the agreement, which rights, when once fixed, shall attach to and pass with such bonds, under such regulations as the by-laws may prescribe, to the successive holders thereof, but shall not subject the holder to any assessment by the company, or to any liability for its debts, or entitle any holder to dividends.

"Sec. 3398. The lien of the mortgages and deeds of trust authorized to be made by the preceding section shall be postponed to the lien of judgments recovered against the company, after its reorganization, for labor thereafter performed for it, for materials or supplies thereafter furnished to it, or for damages, losses or injuries thereafter suffered or sustained by the misconduct of its agents, or in any action founded on its contracts or liability as a common carrier thereafter made or incurred.

"Sec. 3399. The provision of the seven preceding and the next succeeding sections shall extend and apply to companies whose railroads are partly within and partly without this state; a company of this state, possessing such a railroad, shall have capacity to exercise without this state all its powers, privileges, faculties and franchises; a corporation of another state, possessing a railroad which is partly in such other state and partly within this state, may exercise and enjoy within this state all its powers, privileges, faculties and franchises for the purpose of such railroad and its business, not inconsistent with the laws of this state; and all mortgages and deeds of trust made by such corporation upon its railroad, equipments or other property within this state shall operate in the same manner and with the like effect as hereinbefore provided with respect to companies so reorganized; but such part of the railroad as is within this state shall be subject to taxation, and to all regulations of law, in the same manner as railroads of this state in like cases, and the corporation owning the same shall be subject to all duties in respect thereto imposed by law, and may sue and be sued in all cases and in the same manner as a company of this state might sue or be sued.

"Sec. 3400. Railroads and other property mortgaged therewith by such company may, if the court deems it expedient, be sold without appraisement at judicial sales under judgments upon such mortgage; but in such case, in order to prevent sacrifices and protect the interests of all concerned, the court shall fix a minimum sum below which no sale shall be made; and, in order to fix that amount, the court may, if it deems it expedient to do so, refer the subject to a master, with instructions to take testimony and report the sum."