GIBRALTAR FACTORS CORPORATION, PLAINTIFF-APPEL-LANT, v. WILLIAM SLAPO AND DAVID COHN, ES-CROWEE, DEFENDANTS-RESPONDENTS.

Argued January 28 and February 4, 1957—Decided February 25, 1957.

460

*Mr. George H. Rosenstein* argued the cause for the appellant (*Mr. Thomas A. O'Callaghan,* on the brief).

*Mr. Albert L. Cohn* argued the cause for the respondents (*Mr. David Cohn,* attorney).

The opinion of the court was delivered by

JACOBS, J.  ▉▉  The Appellate Division, in an opinion reported at 41 *N. J. Super.* 381 (1956), affirmed the judgment for defendants which had been entered in the Passaic County District Court and the plaintiff has appealed under *R. R.* 1:2–1(*a*). Although the Appellate Division properly heard the matter under an agreed statement in lieu of record under *R. R.* 1:6–2, the defendants now tender an *ex parte* "Supplemental Statement of Facts" which is disputed by the plaintiff. This belated tender is, of course, rejected although we note that the factual dispute in no wise affects the constitutional validity of *N. J. S.* 2A:44–166 which was the sole question presented to and passed upon by the Appellate Division and is the only issue properly before us. *Cf. State v. Bogen,* 13 *N. J.* 137, 144 (1953), *certiorari* denied, *Lieberman v. State of New Jersey,* 346 *U. S.* 825, 74 *S. Ct.* 44, 98 *L. Ed.* 350 (1953); *Journeymen Barbers, etc., Local 687 v. Pollino,* 22 *N. J.* 389, 395 (1956).

The plaintiff Gibraltar Factors Corporation was a New York corporation engaged in the business of making loans. Dura Plaque, Inc. was a New Jersey manufacturing corporation which had its machinery in premises which were located at 80 Glover Avenue, West Paterson, New Jersey, and had been leased by it on July 1, 1954 from the defendant William Slapo. On September 7, 1954 Gibraltar loaned Dura Plaque $2,000 secured by a chattel mortgage on its machinery. Thereafter Dura Plaque defaulted, Gibraltar *instituted* foreclosure, and Slapo asserted a lien under *N. J. S.* 2A:44-166 for six months' unpaid rent. By agreement between Gibraltar and Slapo a foreclosure sale was conducted and the proceeds were placed in escrow pending ultimate determination of Slapo's claim to priority. Gibraltar instituted its action in the district court against Slapo and on cross-motions for summary judgment Slapo prevailed. Gibraltar does not question that under the express terms of *N. J. S.* 2A:44-166 Slapo's claim is entitled to priority; it contends, however, that the statute "is unconstitutional in that it deprives plaintiff of its property without due process of law by substituting without notice the lien of the landlord for that of the plaintiff."

■■ In 1933 the Legislature passed an act to give "a lien to owners of mill, factory, loft and other manufacturing space upon the machinery or other chattels of those to whom space has been rented." *L.* 1933, *c.* 237, *p.* 637. In a preamble the Legislature pointed out that it had been the practice of some manufacturers to place mortgages on their machinery and other chattels to the great prejudice of their landlords to whom rent was due; and in the enacting provisions it declared that such landlords shall have liens which shall have "priority and be paramount to any title, lien, interest, mortgage, judgment or other encumbrance created or acquired after machinery or other chattels are placed in the premises; provided, however, that such priority shall extend only to the amount of unpaid rent for not more than six months." The 1933 statute was substantially re-enacted as part of the *Revision of* 1937 (*R. S.* 2:60–230)

and as part of the 1951 revision of the laws relating to the administration of civil and criminal justice. *N. J. S. 2A:44-165 et seq.* It has long been applied without any question being raised as to its constitutionality. *Singer v. Murray Holding Co.,* 23 *N. J. Misc.* 24 (*Cir. Ct.* 1944), affirmed 133 *N. J. L.* 342 (*E. & A.* 1945); *Blanos v. Eastwood Realty Co.,* 116 *N. J. L.* 1 (*E. & A.* 1935). *Cf. Lerman v. Lincoln Novelty Co.,* 130 *N. J. Eq.* 144 (*Ch.* 1941). While that circumstance does not determine the issue it is an important factor which the courts do not ignore. *Legg v. Passaic County,* 122 *N. J. L.* 100, 102 (*Sup. Ct.* 1939), affirmed 123 *N. J. L.* 263 (*E. & A.* 1939); *Doremus v. Board of Education of Borough of Hawthorne,* 5 *N. J.* 435, 452 (1950), appeal dismissed 342 *U. S.* 429, 72 *S. Ct.* 394, 96 *L. Ed.* 475 (1952). In the *Legg* case Justice Parker remarked that a fundamental policy of our jurisprudence is not to invalidate a statute which has been in force without any substantial challenge for many years "unless its unconstitutionality is obvious"; even without the lapse of time doubts are always resolved in favor of constitutionality. See *McSweeney v. Equitable Trust Co.,* 16 *N. J. Misc.* 193, 196 (*Sup. Ct.* 1938), affirmed 127 *N. J. L.* 299 (*E. & A.* 1941), appeal dismissed 315 *U. S.* 785, 62 *S. Ct.* 805, 86 *L. Ed.* 1191 (1942).

█ When the Legislature passed the 1933 enactment it evidenced its belief that there was an evil of sufficient magnitude to warrant the exercise of its police powers for the protection of landlords of manufacturing establishments against subsequently created chattel mortgages. In the absence of anything in the record to indicate the contrary we assume that its belief was well grounded in fact and that its classification was not unreasonable. *Reingold v. Harper,* 6 *N. J.* 182, 196 (1951); *Jamouneau v. Harner,* 16 *N. J.* 500, 515 (1954), *certiorari* denied 349 *U. S.* 904, 75 *S. Ct.* 580, 99 *L. Ed.* 1241 (1955). *Cf. Gundaker Central Motors, Inc., v. Gassert,* 23 *N. J.* 71, 81 (1956). In *Clark v. Paul Gray, Inc.,* 306 *U. S.* 583, 594, 59 *S. Ct.* 744, 750, 83 *L. Ed.* 1001, 1010 (1939), the United States

Supreme Court aptly remarked that a state legislature's classification is "presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility." Statutes creating liens in favor of landlords and other designated classes of persons are common and have been widely upheld; many of the pertinent cases throughout the country are collected in 16A C. J. S., Constitutional Law, § 631, p. 879 (1956), and many of our pertinent statutes are found in chapter 44 of Title 2A of our Revised Statutes. Thus, N. J. S. 2A:44–21 provides for a lien in favor of a garage keeper who stores or repairs motor vehicles; although his lien is now subordinate to that of the chattel mortgagee (cf. N. J. S. 2A:44–2) an earlier statute (L. 1915, c. 312, p. 556) had given it priority. See Cattell v. Rehrer, 94 N. J. Eq. 292, 294 (Ch. 1922). Cf. Lanterman v. Luby, 96 N. J. L. 255, 261 (E. & A. 1921); Annotation, "Priority as between artisan's lien and chattel mortgage," 36 A. L. R. 2d 229, 240 (1954). The constitutionality of the earlier statute was sustained in Crucible Steel Co. of America v. Polack Tyre & Rubber Co., 92 N. J. L. 221 (E. & A. 1918), where Justice Kalisch cited Provident Institution, etc. v. Mayor and Alderman of Jersey City, 113 U. S. 506, 5 S. Ct. 612, 28 L. Ed. 1102 (1885), which had, in turn, upheld an 1852 New Jersey statute giving water rent liens priority over mortgages. See Shaler v. McAleese, 73 N. J. Eq. 536, 537 (Ch. 1907); Ford Motor Co. v. Town of Kearny, 91 N. J. L. 671, 674 (E. & A. 1918). In the Provident Institution case, supra [113 U. S. 506, 5 S. Ct. 615], Justice Bradley had this to say in answer to the mortgagee's contention that its liens had been unconstitutionally displaced:

"What may be the effect of those statutes, in this regard, upon mortgages which were created prior to the statute of 1852, it is unnecessary at present to inquire. The mortgages of the complainant were not created prior to that statute, but long subsequent thereto. When the complainant took its mortgages, it knew what the law was. It knew that by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien

on the lot. It chose to take its mortgages subject to this law; and it is idle to contend that a postponement of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act, its own consent, is an element in the transaction. The cases referred to by counsel to the contrary, holding void a consent exacted contrary to the constitution, have no bearing on the present cases."

In *Silverstein v. Keane,* 19 *N. J.* 1, 13 (1955) Justice Burling had more recent occasion to refer to the well-settled doctrines that the law is a silent factor in every contract and that parties who enter into transactions in this State must be presumed to have had the New Jersey law in mind. When Gibraltar was asked to lend money on the security of Dura Plaque's machinery in the leased premises at West Paterson, it knew or was bound to know that the transaction would be subject to the many applicable New Jersey statutes including particularly *N. J. S.* 2*A*:44–166. In its light Gibraltar knew that if Dura Plaque thereafter defaulted in the payment of rent its landlord could properly assert a prior lien on the machinery in the leased premises to the extent of six months' unpaid rent. Nevertheless it voluntarily made the loan with the understanding that the machinery would remain in the leased premises and took no steps to insure that it would receive monthly receipts evidencing Dura Plaque's payment of rent. Gibraltar is now in no just position to complain about the accrual of the rental obligation and the landlord's exercise of his statutory right to priority. We consider the attack on the constitutionality of *N. J. S.* 2*A*:44–166 to be wholly without merit and the judgment of the Appellate Division is accordingly:

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—6.

*For reversal*—None.