## GULF, M. & N. R. Co. *v.* HILL MFG. Co.

[90 South. 358. No. 22015.]

1. RAILROADS. *Mortgage statute favoring damage claimants creates no lien.*

   Under section 4067, Code 1906 (section 6696, Hemingway's Code), a railroad company cannot mortgage its rolling stock, income of future earnings, to the prejudice of persons having claims for carriage of freight or passengers, or for personal injuries; but such section does not impress a lien upon such property nor impress it with a trust. The right of a claimant for such injuries to resort to such property does not attach to such property until he has secured a lien by judgment or by contract.

2. COURTS. *Judgment. One may not sue in state court to establish rights against property sold by federal court; state court cannot vacate or modify judgment of federal court having jurisdiction.*

   Where a holder of a mortgage on railroad property files a suit to foreclosure in a federal court having jurisdiction of the person and subject-matter, and such court takes jurisdiction and reserves to itself the right to settle all questions of priority of right between creditors and persons having claims against the property, and causes notice to be published to such person to appear and propound claims, and forbids the seizure of such property under execution, and orders and confirms the sale, and settles questions of priority by its decrees, a person may not bring suit in a state court to establish rights against the property so sold by the federal court. A state court has no power or jurisdiction to vacate or modify a judgment of a federal court, where it has acquired jurisdiction.

APPEAL from chancery court of Chickasaw county.

HON. A. J. McINTYRE, Chancellor.

Bill by the Hill Manufacturing Company against the Gulf, Mobile & Northern Railroad Company. Judgment for the plaintiff, and the defendant appeals. Reversed and decree entered for the defendant, without prejudice to the right of the complainant to propound his claim in the proper federal court.

*J. N. Flowers* and *Ellis B. Cooper,* for appellants.

Counsel for appellee conceded that the Hill Manufacturing Company had no lien on the property of the New Orleans, Mobile & Chicago Railroad Company at the time it was sold through the district court of the United States at Mobile. The Hill Manufacturing Company had nothing but a claim. If it should prosecute its claim to judgment and get a lien while the property remained in the hands of the New Orleans, Mobile & Chicago Railroad Company the claim could be collected, and the judgment would have taken precedence of the outstanding mortgage on the rolling stock. In other words there was property belonging to the railroad company against which appellee had its claim that could have been subjected to the payment of the claim when it should be reduced to judgment. But the claim itself had no priority· and was secured by no lien. A judgment against the same company in favor of the.bondholders would have been just as good as the judgment on the claim which appellee had. When counsel for appellee makes concession that the claim was secured by no lien they go a long way toward the solution of the question presented by this appeal. In other words this appellant bought the property free from any and all liens. When this present controversy with the judgment creditor of the New Orleans, Mobile & Chicago Railroad Company arose there was no longer a mortgage; there had been a sale; the property was not covered by a mortgage lien; it had been sold by order of court and subject to the debts of the New Orleans, Mobile & Chicago Railroad Company. This appellant is not the mortgagee, it is the purchaser. It does not simply hold a lien, it holds the absolute title. And it is conceded by learned counsel for appellee that when appellant bought the property, it had no lien on it. This appellant became the purchaser in 1916 and the judgment was not rendered until April, 1918. At the time appellant bought the property not only was there no judgment against the New Orleans, Mobile & Chicago Railroad Company on

the claim of this appellee but there had been a judgment of the circuit court of Chickasaw county in favor of the New Orleans, Mobile & Chicago Railroad Company and against this appellee. When the judgment was finally rendered against the New Orleans, Mobile & Chicago Railroad Company in April, 1918, that company had no property whatsoever. It had been sold by its creditors and subjected to the payment of its debts. Mechanics, materialmen and laborers are by the statute given liens and the liens are carefully defined. The South Carolina Statutes, somewhat similar to ours (section 1528, General Statutes South Carolina) makes judgments upon claims of the character of this, of appellee, relate back to the date the cause of action accrued, and the lien is fastened upon the property as of the date the damage was suffered.

But as conceded by counsel our statute creates no lien, gives no perference. It does nothing more than to make a judgment lien against the rolling stock and earnings superior to the lien of a mortgage on the same property.

Then we have it that this appellant bought property on which there was no lien and then a judgment was later procured against appellant's predecessor in title. The judgment against the former owner was obtained about a year and one-half after appellant became the owner. The appellant was not a party to the proceeding in which the judgment was obtained. And yet it is treated as being personally liable for the judgment just as if it had been a party defendant to that action. If this appellant is required to pay that judgment it will be compelled to pay it without having had any chance to defend in that suit. According to the theory of appellee the party in interest after the sale of the property was this appellant and not the New Orleans, Mobile & Chicago Railroad Company. It could make no difference with the latter company how the controversy should go since it had parted with all its property. The corporation vitally interested from there on, on the theory of the chancellor's decree herein, was this appellant and not the New Orleans, Mobile & Chicago Railroad

Company. This present proceedding is not one to subject certain property on which, in the hands of the former owner, the creditor had a lien. But, the purpose is, and the effect of the chancellor's decree is, to compel this appellant to pay a judgment rendered against its predecessor in the title simply because if the New Orleans, Mobile & Chicago Railroad Company had not sold the property, the claim could have been made out of the property in its hands. 120 and 12, North Carolina.

In the case of *Trust Company of America* v. *Norfolk & Southern,* 192 Fed. 803, cited by appellee, the judgment creditor, Talbott, sued the original company and obtained judgment and had it enrolled before the order of sale was made and was allowed to be paid out of the proceeds of sale. In *King* v. *Thompson,* 110 Fed. 319, also cited by counsel for appellee, the petition of the judgment creditor was presented in the foreclosure proceeding. In fact the cases in the books where there has been occasion to construe these statutes intended to prevent mortgages from wrapping up the property so as to exclude other creditors, the controversy has arisen over the distribution of the proceeds of sale except in the North Carolina cases above mentioned.

THE DECREE OF THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ALABAMA AND THE EASTERN DIVISION OF THE SOUTHERN DISTRICT OF MISSISSIPPI.

Learned counsel for appellees ignore altogether these decrees. The property of the New Orleans, Mobile & Chicago Railroad Company was directed to be sold. It is true that it was sold in execution of the lien of a mortgage. But the property was sold without any liens against it, except those specially mentioned in the decree. This appellant bought the property and paid the value. If appellee had a claim against the property, it was entitled to its share in the distribution of the proceeds of the sale. It knew of the sale long before it got judgment; it had notice of the sale and of what was paid for the property by virtue of the instruments recorded in the chancery clerk's office at

Houston in the latter part of 1916. It knew of the receivership proceedings and it knew that this appellant had bought the property and what it paid for it and in what courts the receivership was being administered. This appellant had paid its money into court; it was a perfectly legal sale of the property; and the sale was made according to law and it was confirmed by a final decree of the said courts. Appellee would brush these decrees aside in this collateral proceeding and treat them as if they had not been rendered. And the original bill filed in this cause sets up this proceeding through which appellant claims title to the said property. It other words appellee knew that the Gulf, Mobile & Northern Railroad Company was buying this property and taking possession of it and paying its money into court and paying for the property and yet it took no steps to get its share in the distribution of proceeds of sale. Chauncey H. Murphy, from whom appellant bought, was the highest and best bidder. What he paid into court for the property is what the property was supposed to be worth. The proceeds of sale would not go to mortgage creditors alone but all claims having priority for any reason would be fastened upon the proceeds. But this appellant stood by and let the proceeds of sale be distributed and now calls upon the purchaser personally to pay its claim on the theory that the purchaser has received property which might, in the hands of the New Orleans, Mobile & Chicago Railroad Company, have been subjected to the claim.

It is well settled that there is no duty ever resting upon the purchaser at a judicial sale to look after the distribution of proceeds of sale. All he has to do is to pay in the money as directed by decree of the court when the sale is confirmed. The Gulf, Mobile & Northern Railroad Company and Chauncey H. Murphy had no power, right nor duty to direct the distribution of the proceeds and are in no way responsible for the failure, if there was such failure, on the part of the receiver to hold the money intact for the payment of claims that might at some time

.arise and be adjudged preference claims. *The Hofstetter case,* 85 Fed. 75.

Counsel for appellee at page 16 of their brief say that this decision has no application. 1. Because the mortgage was not a consolidation mortgage and therefore not within the provisions of the act.

Counsel evidently did not read the opinion. Instead of it being true that the court reached the conclusion it did because the mortgage in question was not a consolidation mortgage, it is true that the court found that the law applied to all mortgages of all railroads, and that the question of consolidation had nothing to do with it.

### THE DECREE OF THE CHANCELLOR.

Counsel for appellee submit the decree of the chancellor with the statement that it was proper. They have no authority to support it and no reason to support it. If this decree can stand, then there must be, somewhere, a rule of law that whoever buys a piece of property must pay any judgment that may be rendered against the former owner of the property provided it could be shown that the property, if it had remained in the hands of the former owner, could have been subjected to the payment of the judgment. We do not know where to find any such rule.

*Joe H. Ford* and *Lewis, Adler* N *Laws,* for appellee.

Section 6694, Hemingway's Code (section 4065, Code 1906), provides that: "When any railroad shall be sold under execution, or under a deed of trust, or by a decree of a court enforcing a mortgage or other lien, the purchasers thereof, and their assigns and successors shall be entitled to and be invested with all the franchises, rights, powers, privileges and immunities, not inconsistent with the provisions of this chapter (on railroads) appertaining to and possessed by the company or corporation whose property and franchises were sold." It then provides what

the purchaser shall do before it shall operate such property when they shall thereupon become vested with all the powers, rights, privileges and benefits thereof not incon-sistent with the provisions of this chapter, in the same manner and to the same extent as if they were the original corporators of said company, and shall thereby become a railroad corporation.

Section 6695 (section 4066, Code of 1906), provides that: "The said purchasers and assigns may meet and organize a new corporation under the provisions of this chapter, and have all the powers, franchises, rights, privileges, and immunities provided herein, and none other, and may give it such a name as may be adopted," etc.

Section 6696 (section 4067, Code 1906), reads as follows: "Mortgage or deed of trust subordinate to certain claim; a mortgage or deed of trust conveying the income of future earnings or the rolling stock of a railroad company shall not be valid against liabilities incurred by such company as a carrier of freight and passengers, or for damages sustained by person or property."

It will be noted that under the provisions of the first two sections of the chapter above quoted, the purchaser or his assigns and successors, shall be entitled to and be invested with all the franchises, etc., not inconsistent with the provisions of this chapter, and may be authorized to operate said railroad corporation or reorganize same under the provisions of this chapter, one of the provisions to which such purchaser, or his assigns and successors, is subject under section 6696, last above quoted is, that a mortgage or deed of trust conveying the income of future earnings or the rolling stock of a railroad company shall not be valid against liabilities incurred by such company as a carrier of freight and passengers, or for damages sustained by persons or property.

It is not denied that the claim of appellee was of the character described in the above section of the Code, nor is it claimed that appellant was a *bona-fide* purchaser of the property of the New Orleans, Mobile & Chicago Railroad

Company for value without notice of the appellee's claim, but even if such were the case it would not avail the appellant, as hereafter shown, the fact that the appellee's suit was of record in itself was constructive notice of the claim.   The Rospigliosi Transcript introduced in evidence at the trial and made part of this record by agreement of counsel, shows that Murphy was simply the representative of a reorganization committee representing the bondholders and stockholders of the New Orleans, Mobile & Chicago Railroad Company and merely purchased the property at the sale with the understanding that he was to convey it to the reorganized company, which he later did.  . It is conceded that the only title appellant has to the property is through the mortgage of the News Orleans, Mobile & Chicago Railroad Company and the foreclosure proceedings had thereof in the federal courts and as the assignee of the committee purchased at the sale thereunder.   Appellant is but the reorganized company formed as the result of the articles of agreement shown in the Rospigliosi Transcript, pages 181-202.

A railroad corporation has no power to mortgage its property at all in the absence of express legislative grant authorizing it to do so, and this authority may be limited and circumscribed as the legislature deems proper.   This proposition is no longer open to question, nor does the appellant dispute it.   3 Cook on Corporations (6 Ed.), sec. 780, p. 2728; 33 Cyc. 483  and 485; Ib. 486 (C) ; *Frazier* v. *Railway Company,* 88. Tenn. 138, 12 S. W. 537; *Railway Company* v. *Frazier,* 139 U.' S. 283, 35 L. Ed. 196; *So. Ry. Co.* v. *Bouknight,* 25 U. S. App. 415, 70 Fed. 442, 17 C. C. A. 181, 30 L. R. A. 823; *Trust Co. of America* v. *Norfleet & So. Ry. Co.,* 183 Fed. 803.

The legislature then, having the power to make a valid limitation of the kind in question, it only remains to ascertain the true meaning of the provision.   Our own supreme court has said that this provision needs no construction. *N. O., M. & C. R. Co.* v. *Carter,* 107 Miss.1, 64 So. 842.

The language is plain and unambiguous. It not only applies to mortgagors and mortgagees, but it also applies with like force to purchasers, and their assigns and successors, under such foreclosure proceedings. We do not claim that this statute creates any lien on the rolling stock, franchises, income and future income and earnings of the railroad company, although this may be its legal effect. We do assert, however, that such mortgages or deeds of trust, shall not be valid against liabilities incurred, etc., independent of any question of liens or priorities of liens. Nor is it necessary that a claim should be reduced to judgment to be within the protection of the statute. Such mortgages or deeds of trust are absolutely invalid against liabilities incurred, of the character mentioned. That provision by force of law is read into every mortgage and deed of trust given on the class or property to which it applies just as if it were there in express terms, and every purchaser and successor for purchaser takes subject to its terms. *So. Ry. Co.* v. *Bouknight,* 70 Fed. 442, 30 L. R. A. 823; *East Tenn., etc., Ry. Co.* v. *Frazier,* 139 U. S. 283, 35 L. Ed. 196; *King* v. *Thompson,* 110 Fed. 319.

The statute of Tennessee provides that such mortgages shall not be valid and binding against judgments and decrees and executions therefrom, etc. *Frazier* v. *Ry. Co.,* 88 Tenn. 138, 12 S. W. 537, and *Ry. Co.* v. *Frazier,* 139 U. S. 283, 35 L. Ed. 196, the latter affirming the decision of the Tennessee supreme court in the former.

The North Carolina statute makes mortgages given on railroad property invalid as to the claims of such parties as have sustained injury at the hands of such railroad. It is like ours in its provisions except that it covers all kinds of property. *Trust Co. of America* v. *Norfleet & So. Ry. Co.,* 183 Fed. 803, and *Langston* v. *Greenville, etc., Co.,* 120 N. C. 132, 26 S. E. 644.

The appellant raises the point that if our statute gives the appellee a right to subject the rolling-stock, franchise, income and future earnings of the old New Orleans, Mobile & Chicago Railroad Company, now in the possession of the

appellant to the payment of the appellee's claim, others having similar claims may come in and do likewise. We concede this to be correct, subject to the limitation that suit must be brought upon such claim within six years, otherwise they are barred. The mere fact that there may be many or few of these claims is wholly unimportant so far as the protective operation of the statute is concerned. It is to be noted, however, that the appellant has carefully avoided disclosing what, if any, of such claims are still outstanding, although the same gentlemen who were general counsel for the New Orleans, Mobile & Chicago Railroad Company are counsel for the appellant in the instance case. It can be fairly assumed that if there were any outstanding claim to which the appellant might, with advantage to itself, have called this court's attention, it surely would have done so. Every other possible objection has been raised to defeat recovery from the institution of these suits in February, 1913, to the present time resulting in a delay of nearly nine years. The hope undoubtedly was, that the appellee would become weary of the litigation and expense and quit, but this expectation has so far failed.

As to the Cases Relied Upon by the Appellant. The appellant lays great stress upon the case of *Baltimore Trust & Guarantee Co.* v. *Hofstetter,* 85 Fed. 75, decided by Judge LURTON, and contend, that this case holds that a purchaser of railroad property under foreclosure proceedings takes the title clear, notwithstanding the provision of the Tennessee statute declaring that no railroad company shall have the power to give a mortgage which shall be valid against judgment and decrees for damages to person or property. An examination of the facts of the case and particularly of the Tennessee statute, discloses that the statute was entirely different from our own and the decision was put upon grounds which could not arise in the instant case.

In the first place, the Tennessee statute was an act to regulate the terms upon which the railroad corporations

could consolidate and as a part of the consolidation pro-
ceedings issued mortgages. In this connection it provided:
"No railroad shall have power to give or create any mort-
gage or other kind of liens on its railroad property in this
state which shall be valid and binding against judgments
and decrees and executions thereon . . . for damages
done to persons and property in the operation of its rail-
road in this state."

A railroad company gave a mortgage, but not for con-
solidation purposes. Default having been made in the pay-
ment of interest, the mortgage was foreclosed and the prop-
erty sold. Subsequently a judgment was obtained for per
sonal injuries against the original road which it was at-
tempted to be asserted as a lien on the fund arising from
the sale under the mortgage. It was held that the judg-
ment could not participate: (1) Because the mortgage
was not a consolidation mortgage and therefore not within
the provisions of the act, and, (2) that the act only ap-
plied to liens and decrees in effect when the mortgage was
given and not to judgments acquired afterwards. It can
be readily seen that this case has no bearing upon the issue
now before the court.

The case of the *Chattanooga R. R. Co.* v. *Evand,* 66 Fed.
809, also relied upon by the appellant, is not in point. Here
the court had under its consideration the same Tennessee
statute as was discussed in the *Trust Co.* v. *Hofstetter.*
The decision merely held, that under the wording of the act,
for timber furnished and work and labor done, or for dam-
age to person and property in the operation of its railroad
in this state, did not include material furnished and work
done in the corporation's machine shop upon locomotives,
or railroad supplies such as tools, spikes, hardware, etc.,
or damages resulting from detention of freight over the
line, unless such damage was occasioned by actual injury
to the property. This case has no bearing upon the present
question.

Relying upon the two foregoing cases, the appellant con-
tends that the later decisions of Judge LURTON sustained

its contention that the claim of the appellee will not hold against the rolling stock, etc., of the N. O., M. & C. R. Company, now in the hands of the appellant, is without force. We assert that Judge Lurton's decisions from first to last are entirely consistent, and that there is no pronouncement in either the Hofstetter or the Chattanooga case which is at variance with the propositions which we advance or with the other cases which we have cited.

In this connection we might call special attention to in language used in the case of *King* v. *Thompson,* 110 Fed. 319, in which Judge Lurton participated, as follows: "The mortgages in foreclosure in this proceeding were executed long after this statute passed, and in such cases, as was said by Chief Justice Fuller, in construing a somewhat similar statute in Georgia, in the case of *Railway Co.* v. *Bouknight,* 17 C. C. C. A. 191, 185, 70 Fed. 442, 30 L. R. A. 823: 'The law enters into and becomes a part of the contract as if it were there in express terms, citing a great list of cases from the highest courts.' "

We repeat that appelle has the right to go into a court of equity and subject the rolling stock, income and future earnings thereof in the hands of appellant to the payment of appellee's claim so established by the judgment of the court of law, under the statute under discussion. It might also be done as to the franchise, income and future earnings of the N. O., M. & C. R. Company under the general law on the subject of Corporations as set forth in section 4076, Hemingway's Code (section 904, Code 1906).

IT WAS NOT NECESSARY FOR APPELLEE TO INTERVENE IN THE FEDERAL COURT TO PROTECT ITS RIGHTS.

The case of *Trust Company of America* v. *Norfleet & So. Ry. Co.,* 183 Fed. 803, sets at rest the contention that appellee should have intervened with its claim in the receivership proceedings in the Federal court. That contention was also made in that case, and in reply to it the federal court said: "Suppose that the contention of the purchasers be sustained, and he be sent into that jurisdiction,

what power has the court to give him relief? It has sold the property out of which his judgment must be collected, the defendant is insolvent, the purchaser has complied with the terms of his purchase, and has possession of the property. To send him into that tribunal would be to keep the promise to the ear and break it to the heart. It is said that he had permission to intervene and protect his rights before the sale was made. The obvious answer is that he was not compelled to do so. It would seem that the parties to the suit should have seen to it that his rights were protected.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill in the chancery court of Chickasaw county, alleging that on the 27th day of January, 1912, it delivered to the New Orleans, Mobile & Chicago Railroad Company (which at that time owned the line of railroad now owned and operated by the appellant) a shipment of cotton being destined to Lewiston, Me., the freight amounting to two hundred twenty-six dollars and one cent, to be transported to said point, but that the said railroad company failed to deliver the forty-seven bales of said cotton to the value of two thousand, four hundred eleven dollars and sixey-seven cents; that said railroad company having failed and refused to pay for said cotton, that suit was filed in the circuit court of the state, and having lost its cause in said court, appealed to this court, where such judgment was reversed and judgment entered for the plaintiff for said amount, with six per cent. interest thereon; that the said New Orleans, Mobile & Chicago Railroad Company was a corporation of the state of Mississippi, and its railroad lines traverses numerous counties of Mississippi, including Chickasaw county; that on the 20th day of December, 1909, said New Orleans, Mobile & Chicago Railroad Company, in violation of the rights of the public and of the complainant, contracted certain debts, giving a mortgage upon its property; that under section 4067, Code of

1906 (section 6696, Hemingway's Code), said mortgage was invalid as to the rolling stock, franchise, and future income against the claim of the complainant; that thereafter, under the terms of said deed of trust or mortgage, the Metropolitan Trust Company filed a bill in the district court of the United States for the Southern district of Mississippi, Eastern division, in connection with a similar bill filed by the same party in the Southern district, Southern division, of the state of Alabama, praying for a foreclosure of said pretended deed of trust and mortgage in Mississippi and Alabama, and charges that said bill was filed by collusion with the New Orleans, Mobile & Chicago Railroad Company for the purpose of defeating its incurred obligations, debts, and liabilties of its regular business of a common carrier of passengers and freight, among which was that of the complainant, and in said bill asked for the appointment of a receiver to take charge of said property and operate same pending foreclosure; that in accordance with the prayer of said bill a receiver was appointed and entered upon his duties as such; that a decree was entered ordering a foreclosure and that said property was sold on the 11th day of December, 1916, to one Chauncey H. Murphy, who in turn sold it to the present defendant, the Gulf, Mobile & Northern Railroad Company; thereafter defendant took entire possession of all of said property, including the rolling stock, franchise, future rights, etc., in violation of the statute of the state of Mississippi above mentioned; that the full record of said proceedings of foreclosure appear in file No. 12 in the equity files of the United States District Court at Mobile, Ala., and file No. —— in equity in the Eastern division of the Southern district of Mississippi, which said bill states that said file is made Exhibit E to the bill, but which said exhibit is not fully copied into the record before us, but the record in the case of *Rospigliosi et al.* v. *N. O., M. & C. Railroad Co., et al.*, on appeal from the district court of the Southern district of Alabama to the circuit court of appeals challeng-

ing said decree is made an exhibit by agreement to the present record.

The bill further alleges that the sales to the appellant, who was defendant below, are void and of no effect against the claim of the complainant, and that said property conveyed to the defendant is a trust in the hands of the defendant for the purpose of paying the debts contracted in carrying on the business, the liabilities incurred as a common carrier, and damages to persons and property inflicted by the New Orleans, Mobile & Chicago Railroad Company; that the appellant has received large profits and income, which it has converted to its own use and all of which it holds in trust as a trust fund for the payment of the debts, liabilities, and damages of said railroad company, and is subject to full payment of same, but that the amount of the profits and income is unknown to complainants and peculiarly within the knowledge of the defendant, and that an accounting and discovery thereof is necessary on the part of the defendant to determine the same. The bill prays that a decree be entered declaring the deed of trust and mortgage given by the New Orleans, Mobile & Chicago Railroad Company above mentioned to be void in so far as the rights of the complainant are concerned, and to subject the same to the payment of its said judgment and costs, and that a lien be declared against said property, and it be further ordered to pay the said judgment and costs, and, if necessary, that defendant be required to make a full discovery of all the profits, income and earnings of said property since it came into its possession; that the same be declared a trust fund in the hands of the defendant for the purpose of paying complainant's judgment; and if mistaken in the relief prayed, for other, further and general relief. Answer under oath was specially waived in the bill.

There was a demurrer to the bill, which was overruled, and the defendant answered, admitting that it owns and operates the line of railroad set forth in the bill; admits that the New Orleans, Mobile & Chicago Railroad Com-

pany only owned and operated a part, but not all, of the
railroad now owned by the defendant; admits that the
complainant recovered judgment against the New Orle-
ans, Mobile & Chicago Railroad Company as alleged in
the bill, and that the said New Orleans, Mobile & Chicago
Railroad Company was a corporation of Mississippi, and
that it possessed a franchise and then possessed future
income, rolling stock, tracks, rights of way, depots, and
equipment necessary for business of a common carrier of
freight and passengers; admits that said railroad com-
pany executed the deed of trust mentioned in the bill, in-
cluding the rolling stock, franchise, and future earnings,
but denies that said mortgage was in violation of the
rights of the public and of the complainant and denied
that it was void as against complainant or in contraven-
tion of any statute of the state of Mississippi, but avers.
that said mortgage debt was valid at the time it was ex-
ecuted and was a *bona-fide* indebtedness due by the New
Orleans, Mobile & Chicago Railroad Company; admits
the allegation with reference to the filing of suit in the
United States district court, but denies that the bill of
complaint was filed by collusion; admits that the receiver
was appointed and that until' January, 1917, such re-
ceiver had possession and control of said property and op-
erated it as a common carrier; admits that an order for
the sale of said property, including the rolling stock and
future earnings and all other property of the New Orleans,
Mobile & Chicago Railroad Company, was entered in or-
der to effect the payment of the indebtedness for which the
deed of trust was given, and for the payment of such other
claims as were entitled to priority, and that under such or-
ders of said court the property was sold to Murphy and
was confirmed by the court, but that there was an appeal
to the circuit court of appeals, where the decree of the
district court of Mobile was affirmed in the latter part of
1916; admits that Murphy conveyed said property to
this defendant and that it is now the owner thereof; ad-
mits that it took possession of said property, including

the rolling stock, but denies that it took possession of the future earnings of the New Orleans, Mobile & Chicago Railroad Company, and denies that its possession has been in violation of any right of the state of Mississippi; denies that the conveyance from Murphy to it was void as against the public or claims of the complainant; denies that the purchase of rolling stock, income, and future earnings is void or a pretended conveyance, but affirms that it is valid and binding and it was a *bona-fide* purchaser at said sale; denies that it received large profits and income from the property it acquired from Murphy and that it converted such property and income to its own use, and avers that its entire profit and income has been devoted to the payment of its employees and the many obligations incurred in the operation of the railroad; denies that it ever came into the possession of any income or future earnings of the New Orleans, Mobile & Chicago Railroad Company; denies that it holds the property in trust for the payment of the debts and liabilities of the New Orleans, Mobile & Chicago Railroad Company; and avers that the complainant has no right of any character in the property now owned by it. It avers that the property was operated by the receiver under the orders of the court, and that for a long period, more than three years, the claim in question was not presented to the receiver, nor were any steps taken by complainant to protect its alleged rights to any funds or property in the possession of the receiver, or funds that came into court as the proceeds of sale of any rolling stock or franchise, and that complainant was advised of the pendency of the receivership and knew the situation of the said New Orleans, Mobile & Chicago Railroad Company. It then avers that, if any rights were possessed by complainant, complainant failed to take advantage thereof; that the rolling stock now possessed by appellant was purchased subject to liens for the purchase money which are now outstanding and unpaid; that a portion has been paid by the defendant, but out of the in-

come and earnings of the defendant, and not of the New Orleans, Mobile & Chicago Railroad Company.

It appears from the record of the proceedings of foreclosure in the United States district courts of Alabama and of Mississippi that the court in appointing the receiver forbade any person levying on or taking such property under execution, and reserved to itself in said proceedings the right to pass upon all questions of priority of claims against the New Orleans, Mobile & Chicago Railroad Company. In the administration of the receivership during that period of time the court adjudged certain claims as having priority over the mortgage and allowed their payment by the receiver.

There is no allegation in the bill of complaint as to how many claims of the kind involved in this suit were outstanding and unpaid, nor is there any averment as to what specific property was owned by the Mississippi corporation in the state of Mississippi at the time of the accrual of complainant's claim, or at any time thereafter, and while the bill states facts upon which a discovery could have been predicated, it waived that right to a discovery by waiving answer under oath, so no feature of discovery is involved in this litigation.

The section relied upon by the appellee to impose a trust upon the property so as to give it a superior right is section 4067, Code of 1905 (section 6696, Hemingway's Code), which reads as follows:

"A mortgage or deed of trust conveying the income of future earnings or the rolling stock of a railroad company shall not be valid against liabilities incurred by such company as a carrier of freight and passengers, or for damages sustained by persons or property."

Does this section create any lien or impress any trust upon the property of a railroad company prior to its reduction to judgment? And, if so, did the failure of the appellee to propound its claim for priority in the federal district court defeat its rights?

We do not think that the statute was intended to go to the extent contended for by the appellee here. The primary purpose of the statute was to prevent the mortgagees of the railroad company from securing the total earnings of the railroad company under its contract and thus postpone all other claimants against the railroad company until it was satisfied. It was intended primarily to have the operating expenses of the railroad company and claims for damages growing out of its torts or breeches of contract paid before the mortgagee could take possession of the earnings of the railroad company while it was being operated as a going institution. It may be that the statute could be construed so as to protect the owners of claims of the character here involved and others named in the statute, if the proceeding was nothing more than a sale under the mortgage, provided, of course, that the buyers at the mortgage sale had knowledge of the existence of such claim. The statute is in derogation of the common right in making contracts, and its terms will not be unduly extended. The court will seek to give the statute a reasonable and fair construction, neither abridging the terms of the statute beyond its purpose nor extending them beyond their evident purport. The public is vitally interested in having railroads operated; and where one company operating a line of railroad becomes insolvent and unable to pay its obligations and continue its operations, it is necessary that some other person or corporation may be able to purchase and operate the railroad. If such person or corporation must buy at its peril as to all existing claims, regardless of whether they are evidenced by any record affecting the title or by any knowledge of the buyer, then it is manifest that no person or corporation would buy and operate an insolvent railroad. There is nothing in the record to show that the purchaser had any knowledge of the claim in suit, nor that any *lis pendens* notice or other notice was filed of record, so as to charge buyers with notice of the claim. It is manifest also that, if the complainant had a superior right to the buyer of

the property, claims of its class, that is, claims favored by the statute, could not go beyond or exceed in value the property excepted from the mortgage by the statute; that is, when the full value of the property was taken up in paying claims of the class named in the statute, in good faith, under the statute the buyer could not be further harassed by executions.

We are of the opinion that no lien attaches to such property as a result of such claims until the claim is reduced to judgment and enrolled as required by law to impress judgment liens upon other property. *B. T. & G. Co.* v. *Hofstetter,* 85 Fed. 75, 29 C. C. A. 35; *Frazier* v. *Railroad,* 88 Tenn. 138, 12 S. W. 537; *Chattanooga, etc., Railroad Co.* v. *Evans,* 66 Fed. 809, 14 C. C. A. 116; *King* v. *Thompson,* 110 Fed. 319, 49 C. C. A. 59; *B. C. R. & N. R. Co.* v. *Verry,* 48 Iowa, 458; 33 Cyc. 540; 14 C. J. 1026. This being true, the judgments would be payable in their order of priority, and before a suit of this kind could be sustained it would have to be reasonably evident that the complainant's claim was not subordinate to other enrolled judgments or liens created by law or contract. The statute does not have the effect contended for by the appellee. His right to resort to the property exists only when he has secured a lien by judgment or by contract as to such claims.

The bill fails to state a case, under our view of the statute. The decree was a personal judgment against the railroad company. Under no state of facts shown by this record could that decree be upheld. The federal court had jurisdiction of the subject-matter and of the parties, and was empowered to appoint the receiver and to dispose of the whole matter, subject only to such limitations as are found in the statutes of the states or of the United States. The federal statutes permit a receiver of railroads to be sued in a court of law; in other words, it may reduce its claim to judgment without going into the federal court, but before it can secure priority of its claim over other claims, where the federal court has provided that it itself will determine all questions of priorities, it must go into

the federal court and establish its right to priority. With-
in their sphere the federal courts are supreme. It is not
competent for a state court to set aside and modify the
federal court's judgments where it has jurisdiction of the
subject-matter and power to adjudicate the questions
covered by its decrees. See authorities cited in L. C. P.
edition, Digest of Decisions of the United States supreme
court, title "Courts," division VI—d. In the foreclosure
proceedings the federal court reserved jurisdiction to deal
with all-claims and other matters on the application to it
by the the proper parties; and in our opinion the complain-
ant must resort to that court if he has any right now to
establish a claim of priority as to the property here in-
volved.

The judgment of the court below will be reversed and
decree entered here for the appellant, without prejudice
to the right of the complainant, the appellee, to propound
his claim in the proper federal court.

*Reversed and dismissed.*